ARCHIE D. SANDERS et al., Appellants, *v.* POTTLITZER BROS. FRUIT COMPANY, Respondent.

A stipulation to reduce a valid written contract to some other form does not affect its validity, and the stipulation may not be used by either of the parties for the purpose of imposing upon the other additional burdens or obligations, or of evading the performance of any of the provisions of the contract.

This rule applies where, by means of letters and telegrams exchanged between the parties, a clear and definite proposition, containing all the requirements of a completed contract, is made by one and accepted by the other, with an understanding that the agreement shall be expressed in a formal writing.

Where, therefore, in such a case one of the parties refuses to execute the formal agreement, unless certain material conditions and provisions are inserted therein not contemplated or embraced in the correspondence, to which modification the other party declines to assent, the former is still bound by the contract as made by the correspondence.

Plaintiffs submitted to defendant a proposition in writing to sell and deliver to it certain carloads of apples, the proposition specifying the kind, quality, price, time and manner of delivery, which proposition, after correspondence by letter and telegraph, containing proposed modifications on the one side and assent thereto on the other, was accepted as modified, with the understanding that a formal contract should be executed. On presentation of a contract, precisely in the terms agreed to, defendant refused to execute it unless certain material modifications not referred to in the correspondence were inserted, and, upon plaintiffs' declining to assent thereto, defendant notified them that it had placed its order elsewhere. In an action to recover damages, *held,* that a valid and binding contract was entered into by means of the correspondence, and the obligations of the parties thereunder was not affected by the failure to execute the formal instrument; and that for damages resulting from defendant's breach of the contract defendant was liable.

(Argued December 7, 1894; decided December 18, 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made June 23, 1893, which affirmed a judgment in favor of defendant entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Eugene M. Bartlett* for appellants. By the exchange of letters and telegrams between the parties their minds met and a valid contract was entered into. (*Vassar* v. *Camp*, 11 N. Y. 441; *Brown* v. *Norton*, 50 Hun, 248.) The fact that the contract by correspondence was to be followed by a formal writing does not, in any manner, impair its obligations. (*Pratt* v. *H. R. R. R. Co.*, 21 N. Y. 308.)

*Geo. W. Daggett* for respondent. There was no contract consummated between the parties. (49 N. Y. 659; *T. Co.* v. *Smith*, 47 Hun, 474; *Fulerton* v. *Dalton*, 58 Barb. 236; *Kerwan* v. *Byrne*, 29 N. Y. S. R. 287; *Templeton* v. *Wile*, 22 id. 251; *Brown* v. *Norton*, 50 Hun, 248.)

O'BRIEN, J. The plaintiffs in this action sought to recover damages for the breach of a contract for the sale and delivery of a quantity of apples. The complaint was dismissed by the referee and his judgment was affirmed upon appeal. The only question to be considered is whether the contract stated in the complaint, as the basis for damages, was ever in fact made so as to become binding upon the parties. On the 28th of October, 1891, the plaintiffs submitted to the defendant the following proposition in writing :·

"BUFFALO, N. Y., *Oct.* 28, 1891.

"MESSRS. POTTLITZER BROS. FRUIT Co., Lafayette, Ind. :

"*Gentlemen.*— We offer you ten carloads of apples to be from 175 to 200 barrels per car, put up in good order, from stock inspected by your Mr. Leo Pottlitzer at Nunda and Silver Springs. The apples not to exceed one-half green fruit, balance red fruit, to be shipped as follows :

"First car between 1st and 15th December, 1891.

"Second car between 15th and 30th December, 1891, and one car each ten days after January 1, 1892, until all are shipped. Dates above specified to be considered as approxi- mate a few days either way, at the price of $2.00 per barrel, free on board cars at Silver Springs and Nunda, in refrigerator cars, this proposition to be accepted not later

than the 31st inst., and you to pay us $500 upon acceptance of the proposition, to be deducted from the purchase price of apples at the rate of $100 per car on the last five cars.

"Yours respectfully,

"J. SANDERS & SON."

To this proposition the defendant replied by telegraph on October 31st as follows:

"LAFAYETTE, IND., 31*st October.*

"J. SANDERS & SON:

"We accept your proposition on apples, provided you will change it to read car every eight days from January first, none in December; wire acceptance.

"POTTLITZER BROS. FRUIT CO."

On the same day the plaintiffs replied to this dispatch to the effect that they could not accept the modification proposed, but must insist upon the original offer. On the same day the defendant answered the plaintiffs' telegram as follows:

"Can only accept condition as stated in last message. Only way we can accept. Answer if accepted. Mail contract and we will then forward draft.

"POTTLITZER BROS. FRUIT CO."

The matter thus rested till Nov. 4, when the plaintiffs received the following letter from the defendant:

"LAFAYETTE, IND., *November* 2, 1891.

"J. SANDERS & SON, Stafford, N..Y.:

"*Gents.*—We are in receipt of your telegrams, also your favor of the 31st ult. While we no doubt think we have offered you a fair contract on apples, still the dictator of this has learned on his return home that there are so many near-by apples coming into market that it will affect the sale of apples in December, and, therefore, we do not think it advisable to take the contract unless you made it read for shipment from the 1st of January. We are very sorry you cannot do this, but perhaps we will be able to take some fruit from you, as we will need it in the spring. If you can change the con-

tract so as to read as we wired you we will accept it and forward you draft in payment on same.

" POTTLITZER FRUIT CO."

On receipt of this letter the plaintiffs sent the following message to the defendant by telegraph :

" *November 4th.*

" POTTLITZER BROTHERS FRUIT COMPANY, Lafayette, Ind. :

" Letter received. Will accept conditions. If satisfactory, answer and will forward contract.

" J. SANDERS & SON."

The defendant replied to this message by telegraph saying : "All right, send contract as stated in our message." The plaintiffs did prepare and send on the contract precisely in the terms embraced in the foregoing correspondence, which was the original proposition made by the plaintiffs, as modified by defendant's telegram above set forth, and which was acceded to by the plaintiffs. This was not satisfactory to the defendant, and it returned it to the plaintiffs with certain modifications, which were not referred to in the correspondence. These modifications were : (1) That the fruit should be well protected from frost and well hayed ; (2) that if, in the judgment of the plaintiffs, it was necessary or prudent that the cars should be fired through, the plaintiffs should furnish the stoves for the purpose, and the defendant pay the expense of the man to be employed in looking after the fires to be kept in the cars ; (3) that the plaintiffs should line the cars in which the fruit was shipped. These conditions were more burdensome and rendered the contract less profitable to the plaintiffs. They were not expressed in the correspondence and I think cannot be implied. They were not assented to by the plaintiffs, and on their declining to incorporate them in the paper the defendant treated the negotiations as at an end and notified the plaintiffs that it had placed its order with other parties. There was some further correspondence but it is not material to the question presented by the appeal. The writings and telegrams that passed between the parties

contain all the elements of a complete contract. Nothing was wanting in the plaintiffs' original proposition but the defendant's assent to it in order to constitute a contract binding upon both parties according to its terms. This assent was given upon condition that a certain specified modification was accepted. The plaintiffs finally assented to the modification and called upon the defendant to signify its assent again to the whole arrangement as thus modified and it replied that it was "all right," which must be taken as conclusive evidence that the minds of the parties had met and agreed upon certain specified and distinct obligations which were to be observed by both. It is true, as found by the learned referee, that the parties intended that the agreeement should be formally expressed in a single paper which, when signed, should be the evidence of what had already been agreed upon. But neither party was entitled to insert in the paper any material condition not referred to in the correspondence, and if it was inserted without the consent of the other party it was unauthorized. Hence the defendant, by insisting upon further material conditions not expressed or implied in the correspondence, defeated the intention to reduce the agreement to the form of a single paper signed by both parties. The plaintiffs then had the right to fall back upon their written proposition as originally made and the subsequent letters and telegrams, and if they constituted a contract of themselves the absence of the formal agreement contemplated was not under the circumstances material. When the parties intend that a mere verbal agreement shall be finally reduced to writing as the evidence of the terms of the contract it may be true that nothing is binding upon either party until the writing is executed.

But here the contract was already in writing, and it was none the less obligatory upon both parties because they intended that it should be put into another form, especially when their intention is made impossible by the act of one or the other of the parties by insisting upon the insertion of conditions and provisions not contemplated or embraced in

the correspondence. (*Vassar* v. *Camp*, 11 N. Y. 441; *Brown* v. *Norton*, 50 Hun, 248; *Pratt* v. *H. R. R. R. Co.*, 21 N. Y. 308.) The principle that governs in such cases was clearly stated by Judge SELDEN in the case last cited in these words: "A contract to make and execute a certain written agreement, the terms of which are mutually understood and agreed upon, is, in all respects, as valid and obligatory, where no statutory objection interposes, as the written contract itself would be, if executed. If, therefore, it should appear that the minds of the parties had met; that a proposition for a contract had been made by one party and accepted by the other; that the terms of this contract were in all respects definitely understood and agreed upon, and that a part of the mutual understanding was, that a written contract, embodying these terms, should be drawn and executed by the respective parties, this is an obligatory contract, which neither party is at liberty to refuse to perform."

In this case it is apparent that the minds of the parties met through the correspondence upon all the terms as well as the subject-matter of the contract, and that the subsequent failure to reduce this contract to the precise form intended, for the reason stated, did not affect the obligations of either party, which had already attached, and they may now resort to the primary evidence of their mutual stipulations. Any other rule would always permit a party who has entered into a contract like this through letters and telegraphic messages to violate it whenever the understanding was that it should be reduced to another written form, by simply suggesting other and additional terms and conditions. If this were the rule the contract would never be completed in cases where by changes in the market or other events occurring subsequent to the written negotiations it became the interest of either party to adopt that course in order to escape or evade obligations incurred in the ordinary course of commercial business. A stipulation to reduce a valid written contract to some other form cannot be used for the purpose of imposing upon either party additional burdens or obligations or of evading the per-

formance of those things which the parties have mutually agreed upon by such means as made the promise or assent binding in law.   There was no proof of any custom existing between the shippers and consignees of such property in regard to the payment of the expense of firing, lining and haying the cars.   If it be said that such precautions are necessary in order to protect the property while in transit, that does not help the defendant.   The question still remains, who was to bear the expense?   The plaintiffs had not agreed to pay it any more than they had agreed to pay the freight or incur the other expenses of transportation.   The plaintiffs sent a plain proposition which the defendant accepted without any such conditions as it subsequently sought to attach to it.   That the parties intended to make and sign a final paper does not warrant the inference that they also intended to make another and different agreement.   The defendant is in no better position than it would be in case it had refused to sign the final writing without alleging any reasons whatever.   The principle, therefore, which is involved in the case is this, can parties who have exchanged letters and telegrams with a view to an agreement, and have arrived at a point where a clear and definite proposition is made on the one side and accepted on the other, with an understanding that the agreement shall be expressed in a formal writing, ever be bound until that writing is signed?   If they are at liberty to repudiate the proposition or acceptance, as the case may be, at any time before the paper is signed, and as the market may go up or down, then this case is well decided. But if at the close of the correspondence the plaintiffs became bound by their offer and the defendant by its acceptance of that offer, whether the final writing was signed or not, as I think they did, under such circumstances as the record discloses, then the conclusion of the learned referee was erroneous.   To allow either party to repudiate the obligations clearly expressed in the correspondence, unless the other will assent to material conditions, not before referred to, or to be implied from the transaction, would be introducing an ele-

ment of great confusion and uncertainty into the law of contracts. If the parties did not become bound in this case, they cannot be bound in any case until the writing is executed.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur, except EARL, GRAY and BARTLETT, JJ., dissenting.

Judgment reversed. _____