No. 19,091.

S. M. BABBIT, *Appellee*, v. THE CENTRAL LIFE INSURANCE COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

INSURANCE—*Agency Contract—New Oral Contract Made—Commissions Under Old Contract Waived.*  An oral agreement upon the terms of a new agency contract between an insurance company and its solicitor of business under a former contract was made with the understanding that the contract should be written by the officers of the company and sent to the agent for his signature.  The agent immediately commenced work under the new agreement, and continued for more than a month, when he wrote to the secretary to forward the contract.  The request was complied with.  It contained, among other provisions, the stipulation "that this agreement effects the termination of all previous contracts . . . except that said Babbit is to retain his renewal interest in business written prior to January 1, 1911, so long as he remains in the employ of said first party."  After receiving, reading and considering the instrument the plaintiff wrote to the secretary: "I will assure you that it is all right exactly as agreed on," and continued to do business under the new agreement, receiving its benefits, and making no objec-

tions for nearly two months longer, when he entered into the employment of another company, and thereafter demanded commissions due under the old contract, but which were terminated by the clause of the new contract above quoted, which, however, he had not signed.

It is held that a conclusion of the referee that the plaintiff did not waive any of his rights to commissions under the old agreement can not be sustained.

Appeal from Mitchell district court; RICHARD M. PICKLER, judge. Opinion filed December 12, 1914. Reversed.

*C. L. Kagey,* and *R. M. Anderson,* both of Beloit, for the appellant.

*J. W. Tucker,* of Cawker City, for the appellee.

The opinion of the court was delivered by

BENSON, J.: This appeal is from a judgment upon a claim for commissions for soliciting life insurance.

On October 9, 1907, the defendant insurance company made a written contract with the plaintiff authorizing him to solicit insurance upon commissions to be paid according to a schedule of rates for different classes of policies. The agreement contained the following clause:

"A renewal commissions of 5 per cent on second to ten years of insurance inclusive, on an annual production of $50,000."

The following rules were attached to the agreement, forming a part of it:

"1st. The agent must work exclusively for The Central Life Insurance Company in all business pertaining to life insurance during the continuance of this agreement.

"7th. This contract is made subject to such modification by the Company as regards commissions as may hereafter be deemed necessary.

"8th. Either party hereto may cancel this agreement by giving the other fifteen days written notice."

A supplementary agreement of the same date provided that the plaintiff should "have the right to appoint subagents and to receive the overwriting first year's commission and renewals on business produced by said subagents."

The plaintiff worked under these agreements until January 14, 1911, when at a conference at Fort Scott with H. L. Stout, president, and R. S. Tiernan, manager of agencies of the defendant company, the points for a new contract were agreed upon, which the president was to have written out and sent to the plaintiff for his signature. The plaintiff then commenced work under the new agreement, and received from time to time payments amounting to $551.20 upon that account. On February 27, 1911, he wrote from Plains, where he was carrying on his work of canvassing, to the secretary of the company:

"Please send my contract to Plains, Ks. at once and it will reach here before I leave."

On March 1 the secretary enclosed the proposed contract as prepared without signatures, in a letter to the plaintiff, in which he wrote:

"Your letter of the 27th inst. received.
"In the absence of Mr. Tiernan we in his place enclose herewith for your signatures contract in duplicate. Sign and return both copies, after which one finished copy will be returned to you."

The instrument inclosed in this letter was as follows:

"AGREEMENT.

"Entered into this Sixteenth day of January, 1911, between The Kansas Guaranty Company, party of the first part, and S. M. Babbit, of Beloit, Kansas, party of the second part:

"Witnesseth: That in consideration of the mutual covenants hereinafter expressed, the parties hereto covenant and agree, each with the other, as follows, to-wit:

"1. Said second party shall devote his entire time and attention to the business of soliciting for applications for life insurance in The Central Life Insurance

Company, and appointing agents to solicit for business for said Company, the contracts of such agents to provide for maximum commissions ranging from fifty to seventy per cent of the first annual premiums, such contracts to be approved by said first party.

"2. Said second party shall prosecute the work according to instructions received from said first party from time to time.

"3. Said second party shall be paid as compensation for his services a Salary of One Hundred Dollars per month and actual traveling expenses when away from home—such as railroad fare and hotel and livery bills.

"4. Said second party shall receive a commission of twenty per cent of the gross premiums collected on all personal business obtained either alone or with other agent, paid-for basis.

"5. Said second party shall receive a five per cent overwriting commission on all personal business produced by agents appointed by him, paid-for basis, said overwriting commission to be paid to said second party on or about January 15, 1912, for business produced and paid for during the year 1911.

"6. It is mutually understood and agreed that this agreement effects the termination of all previous contracts entered into between the parties hereto, or between The Central Life Insurance Company and said Babbit, except that said Babbit is to retain his renewal interest in business written prior to January 1, 1911, so long as he remains in the employ of said first party. It is definitely understood, however, that said Babbit shall have no interest whatever in the renewal premiums on business written after December 31, 1910.

"7. The compensation outlined herein is the only compensation said second party is to recieve, unless by signed supplementary agreement entered into between the parties hereto.

"8. This contract shall take effect as of the date hereof and continue in force until terminated by either party giving written notice to that effect.

"In Witness Whereof, The parties hereto have set their hands the day and year first above written."

The recital of the Kansas Guaranty Company as the party of the first part in this contract is thus explained: That corporation was the general agent of

the defendant in charge of writing insurance. Its president was agency manager of the defendant. It seems that remittances were forwarded from time to time by that corporation, signed by it by R. S. Tiernan, president of the guaranty company, and the acts of Mr. Tiernan, whether as manager of the defendant or president of the Kansas Guaranty Company, relating to the business now under consideration should be considered as the acts of the defendant.

After receiving this instrument the plaintiff, on March 15, 1911, wrote to the secretary of the defendant:

"In regard to those contracts sent me to sign will say that the reason I have not returned them is because I wanted to see Mr. Tiernan and expected to see him before this time. If he comes out soon I wish to see him in regard to it. However, I will assure you that it is all right exactly as agreed on. If you don't object I will hold them until he comes out which I think will be soon."

He did not return the instrument, nor suggest any changes, nor in any manner indicate that it was not drawn in accordance with the verbal agreement, but continued his work, receiving checks for expenses as before, until May 7, 1911, when he entered into the employment of another life insurance company. About May 24 there was a settlement for completed business. Some time afterwards this action was commenced to recover commissions. In the first cause of action the plaintiff alleges that he produced more than $50,000 worth of business each year for 1907, 1908, 1909, and 1910; that on January 1, 1911, defendant company had paid to him the sum of $720.42 for renewal premiums on business written by him prior to December 1, 1909, and renewed between December 1, 1909, and December 31, 1910; that there was due him from defendant on January 1, 1912, the sum of about $900 for renewal premiums under his contract for insurance written by

him prior to January 1, 1911, and renewed during the year 1911. In the second cause of action he alleges that there was due him the sum of $900 for renewals paid to the company during the year 1912 upon business written by him prior to January 1, 1911. In the third cause of action he alleges that there was a balance due him upon account under his last contract of $503.80, a part of which he claimed was for renewals upon premiums paid to the company between January 1, 1911, and May 24, 1911. Upon the trial it was agreed by the parties that the plaintiff was entitled to recover from the defendant the sum of $120.71 on the third cause of action set out in his petition, and that this amount consisted of the sum of $104.12 as a balance on renewal commissions from January 14, 1911, to May 24, 1911, and the further sum of $16.59 to cover 5 per cent commission on paid-for business written by plaintiff's agents under the last contract. The controversy remaining to be determined by the trial court was the right of appellee to recover upon his first and second causes of action.

The material findings of the referee are:

"2. Under the terms of this contract (the original agreement) the plaintiff worked for defendant until January 14, 1911, writing a sufficient amount of paid-for insurance during said time, through subagents and self, to entitle him to receive from said defendant a renewal commission of five per cent on all premiums paid to or collected by said defendant, on 2nd and 10th years inclusive, of the insurance so written, as part compensation for services so rendered for defendant.

"3. Defendant paid or settled with plaintiff for all renewal commissions so due to plaintiff up to January 1, 1911.

"4. Five per cent commission on all premiums paid upon renewals from May 7, 1911, to December 31, 1911, on insurance written by the plaintiff or his subagents prior to January 1, 1911, amounted to the sum of $464.52, and five per cent commission upon all renewal premiums paid on such insurance during the year 1912 amounted to the sum of $632.61.

"6. On January 14, 1911, plaintiff went to the office of defendant at Fort Scott, Kansas, and there had a conversation with the president of the defendant company, Mr. H. L. Stout, and the agency manager of said company, Mr. R. S. Tiernan, plaintiff stated he had become tired of working under his old contract and asked for a new contract. He stated he would work and go out in the field again for $100.00 per month and 20 per cent commission on all business written alone or with other agents, and 5 per cent commission on any business written by agents appointed by him, and his expenses and traveling expenses. Absolutely nothing was said about changing the conditions of the original or former contract relative to renewal commissions of plaintiff thereunder, nor of the cancellation of same or his rights thereunder. Mr. Stout, the president of the defendant company, stated to Mr. Babbit that he would take down the notations with the understanding they have this embodied into a contract and sent to him later.

"9. Plaintiff commenced working for defendant under such verbal agreement and continued in its employ until May 7, 1911, when he left its employ. During the time of such employment and up to June 1, 1911, plaintiff received checks in the sum of $551.20 upon his account with said defendant.

"11. Plaintiff did not sign said contracts, holding same to confer with the agency manager, as per his letter of March 15, 1911, to Mr. Lyon, nor did defendant ever sign said contracts or ask for same from plaintiff. Plaintiff did not waive any of his rights to the five per cent renewal commissions already earned under his contract of October 9, 1907, with said defendant company."

As matter of law the referee concluded that the plaintiff was entitled to:

"Five per cent commission on all renewal premiums paid to or collected by defendant on all paid-for insurance written by plaintiff or his sub-agents prior to January 1, 1911, for the years 1911 and 1912, as part compensation for securing the business, writing the policies and services rendered up to said time of January 1, 1911, as compensation already earned and of which he could not be deprived by the defendant company."

The plaintiff testified that it was agreed at the conference at Fort Scott, when the new agreement was made, that he should retain his renewal interest in the old contract. The evidence, on the part of the defendant, was that the company was to pay on these renewals so long as he continued with the company, and that the plaintiff said that would be acceptable. As we have seen, the referee found that:

"Absolutely nothing was said about changing the conditions of the original or former contract relative to renewal commissions of plaintiff thereunder, nor of the cancellation of same or his rights thereunder."

The defendant's contentions are:

"First, that under the original contract appellee was only entitled to renewal commissions so long as he remained in appellant's employ, and produced $50,000 worth of business per year, and second, that he accepted the terms of his second contract with the Company which provided in express terms that Mr. Babbit should retain his renewal interest in business written prior to January 1, 1911, only so long as he remained in the employ of the Company."

If the original agreement was entirely superseded by the new one, it is only necessary to determine what the new one was in order to decide this controversy.

The plaintiff insists that the part of finding No. 6 relative to renewal commissions under the old contract, made upon conflicting evidence, is final within well-settled rules followed in many decisions. Construing this finding that at the making of the new agreement nothing was said about changing the conditions of the old contract relative to renewal commissions as a finding that such a change was not agreed to, although considered, the further question remains whether the plaintiff is estopped by his subsequent conduct from denying that such change was made, or to be more exact, whether his assent to the instrument containing such change was proved. The oral agreement was to be reduced to writing. An instrument was accordingly

prepared purporting to embody all its terms, which, at the plaintiff's request, was sent to him on March 1. On March 15, after full opportunity to examine it, and after he had, in fact, examined it, he wrote to the secretary: "I will assure you that it is alright exactly as agreed on." The clause in question was plain: "This agreement effects the termination of all previous contracts . . . except that said Babbit is to retain his renewal interest in business written prior to January 1, 1911, so long as he remains in the employ of said first party." That he noticed and considered this provision is shown by the fact that he testified, "I would n't sign the contract with a joker in it making me forfeit my renewals." With full knowledge that the company claimed that commissions for renewals should be retained only while he remained in the service of the company, he continued to work under the new agreement, receiving remittances under it, accepting all its benefits, but secretly intending to repudiate one of its material provisions, although expressly stating that it was all right in every particular. It is not always necessary that in order to be bound a party should sign a written instrument purporting to contain his agreement. A signature is the usual evidence of assent, but assent may be shown in other ways, as in this instance, by a collateral writing. No accident, fraud, or mistake, or the like, is shown or even claimed. One may not in such circumstances assure the other contracting party of acquiescence, hold the instrument in possession without objection, continue to work under it, and receive its benefits until another opportunity of employment is open, and then be allowed to repudiate it. (*Sentney v. Interurban Railway Co.*, 90 Kan. 610, 135 Pac. 678; 3 Parsons on Contracts, 9th ed., p. 4; 9 Cyc. 299; *De Beill v. Thomson*, 3 Beavan, 469; *Sanders et al. v. P. B. F. Co.*, 144 N. Y. 209, 39 N. E. 75.)

The findings of the referee Nos. 10 and 11 are in conflict. The plaintiff's letter of March 15 and his subsequent conduct prove his assent to the instrument

received and retained by him without objection. The basic facts found by the referee must prevail over the general conclusion that there was no waiver or assent. (*The State v. Kirmeyer*, 88 Kan. 589, 129 Pac. 1114.)

The judgment is reversed, and the cause is remanded with instructions to render judgment for the plaintiff for $120.12, upon the third cause of action, as agreed to by both parties.