and for that reason the complaint was properly dismissed. But the plaintiff holds the bond and mortgage by a written assignment from Silverstein. He had the legal title at the time the action was commenced, and while it is true the testimony shows they were assigned to him merely for the purpose of bringing the action, that in no way invalidates the assignment. Sheridan v. Mayor, 68 N. Y. 30; Greenwood v. Marvin, 111 N. Y. 423, 19 N. E. 228; Foster v. Central National Bank, 183 N. Y. 379, 76 N. E. 338; Osborne v. Hughes, 128 App. Div. 128, 112 N. Y. Supp. 572; Hunter v. Allen, 106 App. Div. 557, 94 N. Y. Supp. 880. It is sufficient to entitle the plaintiff to maintain the action that he has the legal right to enforce collection of the bond and mortgage and that the respondents would be protected in a payment to or recovery by him.

The judgment appealed from is therefore reversed, and judgment directed for plaintiff for the relief demanded in the complaint, with costs. All concur.

---

KINGSWAY CONST. CO. v. METROPOLITAN LIFE INS. CO. (No. 6802.)

(Supreme Court, Appellate Division, First Department.   February 5, 1915.)

CONTRACTS (§ 24*)—AGREEMENT TO LOAN MONEY—CONSUMMATION—ACCEPTANCE OF APPLICATION—WHAT CONSTITUTES.

A letter in response to an application for a loan did not constitute, as a matter of law, an acceptance of the loan and a complete contract, for breach of which the proposed lender could be held liable in damages, where it was in the nature of a counter proposition, and contained a number of essential details not covered by the application.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 100–103; Dec. Dig. § 24.*]

Appeal from Trial Term, New York County.

Action by the Kingsway Construction Company against the Metropolitan Life Insurance Company. From judgment for plaintiff, and denial of new trial, defendant appeals. Reversed, and complaint dismissed.

See, also, 146 N. Y. Supp. 883.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

Frederick C. Tanner, of New York City, for appellant.
George E. Joseph, of New York City, for respondent.

HOTCHKISS, J. The action is to recover damages because of defendant's failure to complete a building loan. On February 19, 1909, before plaintiff corporation was organized, and before it had taken title to the premises in question, one Rae Ginsberg, the wife of Samuel, and who the promotors of the plaintiff proposed should eventually become its president, acting in plaintiff's behalf, applied in writing to the defendant for the loan. The application was in substance as follows:

"The undersigned desires to procure a loan of $180,000 at 6 and 5½ per cent. interest per annum, for the term of 5 years, * * * on the bond of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
151 N.Y.S.—39

the Kingsway Construction Company secured by first mortgage on the property described as follows." Here follows a description of the premises and the dimensions, number of stores, building material and proposed use of the improvement to be placed thereon; the owner's estimated value of the land and of the buildings to be erected and their anticipated annual rent; the periods of construction when payments on account of the loan were desired; and that "fire insurance to cover" would be placed in companies designated by the defendant and through its authorized agent.

The application stated that it was made "expressly subject to the approval of the applicant's title" by the defendant's attorneys, and in response to a requirement contained on the printed blank on which the application was made, plaintiff submitted the names of two individuals as references to its pecuniary responsibility as bondsmen. On March 11th Stabler, defendant's comptroller, wrote to plaintiff saying:

"Subject to the approval of title by our attorneys, and subject also to the approval of plans and specifications still to be submitted, our finance committee has authorized a loan of $180,000 to be made to you on premises. * * * Interest to be at 6 per cent. for two years from April 1, 1909, and 5½ per cent. for three years longer. We are to receive the collateral bonds of Mrs. Rae Ginsberg and others interested in the company, guaranteeing to us the completion of the building. The improvement is to consist of a six-story elevator apartment house, with stores on the avenue, and is to be built according to plans and specifications still to be submitted, and to be inclosed by August 1, 1909, and completed by January 1, 1910. Fire insurance to the amount of $160,000 is to be placed through our brokers, Messrs. Dutcher & Edmister, 58 William street, as the building progresses. An architect's fee of $450 is to be paid to our architect, Mr. D. E. Waid, out of the first advance for his services. Please arrange with our attorneys, Messrs. Ritch, Woodford, Boves & Butcher, 18 Wall street, for the examination of title and preparation of papers. Please also arrange with Mr. Waid for a schedule of payments."

On March 16th Stabler wrote Rae Ginsberg that, before defendant went any further with the matter of the loan, it would be necessary for defendant to have satisfactory references as to plaintiff's responsibility. On March 25th he again wrote to the same effect. In the meantime, under date of March 20th, a provisional schedule of proposed payments had been prepared by Waid, with the approval of Samuel Ginsberg, who conducted all negotiations in plaintiff's behalf. On March 31st Waid wrote plaintiff that by the terms of the proposed loan agreement it was the right of the defendant's architect to inspect all foundation trenches before any cement was put in, and that he must be notified when each trench was completely open and before any cement work was done. The letter also said:

"Will you kindly have sent me at your earliest convenience the complete revised specifications and general floor plans and elevations and framing plans; also the foundation details. * * * I strongly advise that you submit preliminary designs, both plans and elevations, before working drawings are made, in order that delays may be obviated in the event that the Metropolitan Life Insurance Company has any objections to any features of the same."

In another paragraph of the letter it was said:

"Please note paragraph N on page 6 of the *loan contract,* particularly with reference to erection of stairs," etc.

The words "loan contract" undoubtedly referred to the printed form of contract commonly used by defendant in making its building loans. Attached to the letter were a number of "specifications," which Waid referred to as proposed to be contained in the formal contract of loan, and concerning which he requested that plaintiff's architect should consult with him in case plaintiff desired any changes.·

On April 3d the defendant's attorneys notified plaintiff that they had received the approved application, that the examination of title had been referred to them, and that plaintiff should see them with regard to the business. On March 30th plaintiff started to excavate for its proposed building, and between that date and April 3d Samuel Ginsberg submitted to Waid plaintiff's proposed plans, but no specifications. On the latter date Waid wrote plaintiff that certain changes in these plans would have to be made before he could recommend their acceptance. Samuel thereafter conferred with Waid concerning his' objections, and Samuel swears that he agreed to make all changes requested by Waid, none of which, he claims, would have delayed construction or necessitated new plans. Defendant's evidence, however, was to the effect that Waid insisted upon new plans in substitution for at least a portion of the plans presented. No further plans, however, were ever furnished, and the plaintiff continued work on the foundations. On April 9th Waid wrote plaintiff that an inspector had found that concrete was being loaded on a bed of sand on the face of a rock, that all work so done must be taken out to allow an inspection of the bottom, that no more work should be done until the necessary plans had been approved, and also that no cement should be laid until the bottom of the trenches had been inspected. Plaintiff nevertheless continued its work, and on April 13th was notified by defendant that it would proceed no further with the loan.

The court charged the jury that defendant's letter of March 11th constituted as matter of law an acceptance of the loan and a complete contract between the parties, except so far as the approval of plans were concerned, and it was left to the jury to determine whether what had occurred between Samuel Ginsberg and Waid constituted an approval of plans on defendant's part. The important matter of specifications seems to have been lost sight of. The jury was also charged that plaintiff was entitled to a reasonable opportunity to prepare plans for approval, and that if they found that Waid had acted in bad faith, and had refused to approve plans offered by plaintiff, for the purpose of enabling the defendant to escape from its contract, plaintiff was in such event excused from procuring defendant's approval of the plans.

It is apparent that the theory on which the case was submitted to the jury was radically wrong. As for the good faith of defendant's architect, Waid, I can discover nothing in the evidence justifying the injection of any such question into the case. But the vice of the charge lay principally in the treatment of defendant's letter of March 11th. This partook more of the nature of a counter proposition than it did of an acceptance of plaintiff's application for the loan. It contained a number of essential details not covered by the application. The indefinite statement in the application concerning the period during which the

respective rates of interest were to be paid was made fixed and positive, collateral bonds for the completion of the building were required to be given by Rae Ginsberg and others interested in the plaintiff, the proposed buildings were to contain elevators and were to be built according, not only to plans, but to specifications thereafter to be approved by the defendant, a schedule of payments to be made on account of the loan was to be arranged with defendant's architect, the buildings were to be inclosed by August 1, 1909, and completed by January 1, 1911, the amount of fire insurance was definitely fixed, the plaintiff was required to pay defendant's architect's fees out of the first moneys it should receive, and defendant's attorneys were to prepare the "papers" which should formally evidence the contract of the parties.

It is evident that, anticipating the execution of these papers and for the evident purpose of accommodating themselves to plaintiff's convenience and facilitating the preliminaries necessary for the expression in writing of the completed agreement, some of defendant's representatives attempted to work out with plaintiff some details; but there is nothing to show that the plaintiff ever abandoned the essential requirements of its letter of December 11th, or that it ever released plaintiff from compliance therewith. There was no attempt on plaintiff's part to show any substantial performance of these requirements. No representative of it ever conferred with defendant's attorneys with respect to the preparation of any formal loan agreement, or in the matter of the title, no guarantors of the completion of the building were ever furnished, nor were two satisfactory references as to plaintiff's responsibility as a bondsman given; in short, plaintiff was not shown to have even orally accepted, much less to have complied with, the material conditions under which defendant was willing to make the loan. It is perfectly plain that by the letter of December 11th defendant expected and required that the contract for the loan should be reduced to writing; and so far as the plaintiff is concerned, it may be said, as was said of the plaintiff in Brauer v. Oceanic Steam Nav. Co., 77 App. Div. 407, 411, 79 N. Y. Supp. 299, 302:

"It is simply impossible to believe that he ever supposed that a contract of such a character, with so much detail, with so many matters to be covered fixing rights and obligations and liabilities, was simply to be left in the air."

The case presented by this record is entirely different from the class of cases illustrated by Sanders v. Pottlitzer Bros. Fruit Co., 144 N. Y. 209, 39 N. E. 75, 29 L. R. A. 431, 43 Am. St. Rep. 757.

The judgment and order should be reversed, with costs, and the complaint dismissed, with costs. All concur.