Sigmund Ashner, Respondent, v. Farmers Loan and
Trust Company, Appellant.

(Supreme Court, Appellate Term, First Department, March, 1918.)

Mortgages — extension of — contracts — agency — breach of guaranty
— attorneys.

> Where the correspondence by letter between plaintiff and defendant as to an extension of the times of payment of several mortgages in its custody upon real estate owned by plaintiff shows that defendant did not undertake to bind the mortgagees, its principal, but merely to conduct negotiations and thereby bring the minds of the mortgagor and mortgagees into accord, interposing the condition for its own and its principals' protection that no binding obligation should arise until the minds of the principals met in the formal execution of the appropriate papers extending the mortgages, it must be held that no agreement of any kind either in form or reality was consummated between plaintiff and defendant as agent of the mortgagees and defendant cannot be held liable for breach of warranty of authority to enter into such a contract.

> Where as a result of defendant's misrepresentation of fact that the mortgagees would extend the mortgages at four and one-half per cent plaintiff was misled and induced to pay the attorney of the mortgagees for an extension agreement, which was never executed, defendant is liable for the amount of money so expended by plaintiff.

Appeal by defendant from a judgment of the Municipal Court of the city of New York, borough of Manhattan, first district, in favor of the plaintiff.

Geller, Rolston & Horan (George S. Mittendorf, of counsel), for appellant.

Lind & Pfeiffer (Alfred D. Lind, of counsel), for respondent.

PHILBIN, J.   The plaintiff applied to the defendant company for an extension of the times of payment of three bonds and mortgages aggregating $205,000 on real estate owned by him.   The mortgages were in defendant's custody and one of them matured on December 24, 1916, and the other two on January 10, 1917.

The negotiations were conducted by correspondence which opened with a letter from plaintiff on November 14, 1916, requesting extensions for a period of five years " on the same conditions " and offering to pay the sum of $32,000 in reduction of the principal sums of the three mortgages.   The defendant on November fifteenth answered that it had forwarded a copy of plaintiff's letter to the mortgagees and would advise the plaintiff later as to what action they desired to take.   On November twenty-fifth defendant wrote stating that the arrangements outlined in the plaintiff's letter were satisfactory, with the exception that the mortgages could be extended for only three years instead of five.   Defendant also said that upon receipt of reply stating that these terms were satisfactory defendant would instruct the attorneys for the mortgagees to prepare the necessary papers.   On November twenty-ninth plaintiff wrote inquiring as to the amount to be charged by the attorneys, stating that he would be satisfied with an ordinary letter extending the mortgages, and again urging that an extension for five years instead of three be granted.   On December first defendant replied that the extensions of the mortgages could only be arranged on terms outlined in the letter of November twenty-fifth; that the attorneys would charge thirty-five dollars for each extension agreement; and that " It will be necessary, in order to extend these loans, that you enter into formal extension agreements."   Plaintiff answered on December

fourth saying that he would be ready to make the payments in reduction of the principal sums on specified dates and asked for advice as to whom and where payments were to be made. On December fifth defendant wrote that all the papers had been handed to the attorneys for the mortgagees and that they would communicate with the plaintiff direct.

On December twenty-third plaintiff paid to defendant $5,000 on account of the mortgage which matured the next day, and at or about the same time signed a formal extension agreement for that mortgage and paid the attorneys $35 as their fee. So far as the record shows no formal extension agreement was ever executed by the mortgagees.

On January 2, 1917, defendant wrote plaintiff that it found on referring to its clients' letter of November 24, 1916, that the extensions were to be arranged at a rate of five per cent instead of four and one-half per cent; that it had, therefore, instructed the attorneys to hold the extension agreements in abeyance so that plaintiff might be notified of mortgagees' original intention. Defendant again wrote on January fifth stating that the mortgagees had confirmed their original instructions to extend the mortgages at the rate of five per cent.

After this, plaintiff called at the office of the defendant and, in the belief that the correspondence constituted an agreement, tendered $27,000 in cash and demanded that the agreement for extensions be carried out; also tendered the sum of $70 in cash to cover the attorneys' fees for the remaining two extension agreements and offered to pay any other necessary disbursements. The defendant, by the vice-president who had conducted the correspondence, refused to do anything pursuant to the demand. The plaintiff thereupon said that he would replace the mortgages by borrowing

elsewhere at the rate of four and one-half per cent and would hold the defendant responsible for any expenses incurred over and above the sum plaintiff would have been compelled to expend if the mortgagees had executed the three agreements.

The plaintiff did borrow the money elsewhere at the rate of four and one-half per cent and the new mortgagee took over the mortgages by way of three assignments, for which plaintiff paid $30 as attorneys' fees under protest. Plaintiff also paid the sum of $736.36 as fees to the attorneys for the new mortgagees and $250 to his own attorneys. Including the $35 paid for the one extension agreement signed by the plaintiff on or about December 23, 1916, we have a total disbursement by plaintiff of $1,051.36. He figured that if the principals of the defendant had executed the three formal extensions he would have been compelled to disburse only $105 as attorneys' fees. He, therefore, demanded and recovered judgment for the difference, $946.36, with interest.

The plaintiff's theory of action is predicated upon the rule of law laid down in the case of *Taylor* v. *Nostrand,* 134 N. Y. 108, to the effect that an agent who exceeds his authority in dealing with a third person in behalf of a principal is liable for the breach of an implied warranty of authority. The complaint, in the endeavor to bring the instant case within the rule, sets forth in substance that the defendant, warranting and representing itself as having authority, entered into an agreement with plaintiff whereby it was agreed that the mortgages held by defendant's principals would be extended and that formal instruments in writing would be executed by the mortgagees; that such representations of authority were untrue and said mortgagees refused to extend the mortgages. The facts

Appellate Term, First Department, March, 1918.    [Vol. 102.

established do not, however, bring the case within the rule.

The correspondence shows that the defendants did not undertake to bind the principals, but merely to conduct negotiations and thereby bring the minds of the parties into accord, interposing the condition for its own and its principals' protection that no binding obligation should arise until the minds of the principals met in the formal documents themselves. Thus, while the terms of the agreement were not " left in the air," to use the language of the opinion in *Brauer* v. *Oceanic Steam Navigation Co.,* 77 App. Div. 407, 411, the minds of the parties did not meet in the informal writings as in the case of *Sanders* v. *Pottlitzer Bros. Fruit Co.,* 144 N. Y. 209. On the contrary we have a situation such as is suggested in *Disken* v. *Herter,* 73 App. Div. 453, 455. The conclusion is that no agreement of any kind, either in form or in reality, was ever consummated between plaintiff and the defendant as agent for the mortgagees.

The cases of *Dung* v. *Parker,* 52 N. Y. 494, and *Baltzen* v. *Nicolay,* 53 id. 467, cited by the respondent, do not help him. They both hold that, in order to make the agent liable, the unauthorized contract must be one that could be enforced against the principal if authorized. In the case at bar there is no contract even in form.

The appellant also raises the point that there was no consideration for the alleged extension agreement contained in the correspondence, and cites *Olmstead* v. *Latimer,* 158 N. Y. 313. The plaintiff recognizes the principle of this case, but argues that his promise to pay $105 to the attorneys for the mortgagees for drawing the three extension agreements is sufficient additional consideration to make the cited case inap-

plicable. Since it has already been shown that there is no agreement, it is unnecessary to pass on this point.

It must be held, therefore, that defendant has not been guilty of a breach of warranty of authority to enter into a contract; and the measure of plaintiff's damage is certainly not the difference between what plaintiff did expend and what he would have expended if the formal extensions had been signed, for he cannot predicate a right upon an agreement, existing neither in form nor in reality.

The next question is whether plaintiff suffered damage of any kind for which defendant is liable. It unquestionably appears that when the defendant wrote that the mortgagees would extend the mortgages at four and one-half per cent it misrepresented the fact and thereby misled the plaintiff. As a result of this misrepresentation, plaintiff was induced to pay thirty-five dollars to the attorneys for the mortgagees for an extension agreement never executed by them. For this fruitless expenditure, the defendant must answer to the plaintiff. An examination of all the other items of expense set forth above will show that plaintiff would in any event have made them, for the mortgagees never in fact intended to extend the mortgages at the lower rate of interest.

Respondent concedes that the case of *Realty & Commercial Co.* v. *Winter,* 151 N. Y. Supp. 904, is an authority against his further·point that the appeal was not taken within the statutory time.

Judgment modified by reducing it to the sum of thirty-five dollars and, as modified, affirmed, without costs.

GUY, J., concurs.

BIJUR, J. (concurring). I concur on the ground that the defendant did not, and did not undertake to, bind

either itself or its principals to any agreement. The mere fact that defendant informed the plaintiff in its letter of December first that it would be necessary '' in order to extend these loans that you enter into formal extension agreements '' might not of itself perhaps be sufficient to prove that it was understood that no agreement should be regarded as having been reached until a formal agreement was drawn and signed between the plaintiff and defendant's principals. But the previous correspondence demonstrates, as I view it, that plaintiff was of the same opinion. Thus, in reply to defendant's letter of November twenty-fifth that they would '' instruct our clients' attorneys to proceed with the preparation of the necessary papers,'' plaintiff wrote '' as far as I am concerned, I would be quite content with an ordinary letter extending the existing mortgages.'' I do not see how this can be interpreted otherwise than as meaning an '' ordinary letter '' from defendant's principals, the mortgagees.

As both plaintiff and defendant, therefore, appear to have been under the very clear impression that the agreement should not become binding until appropriate papers had been executed between the principals themselves, and·as such an understanding is quite reasonable in a case where one or both of the negotiating parties is a mere agent, I am of opinion that defendant cannot be held for breach of warranty of authority since it did not undertake to make any agreement.

Judgment modified and, as so modified, affirmed, without costs.