Mechanicsville Associates, Inc., Respondent, *v.* William L. Thompson, Appellant.

(Supreme Court, Appellate Term, First Department, November Term — Filed December, 1920.)

**Summary proceedings — when order awarding possession reversed —evidence — lease — landlord and tenant.**

> Where by an interchange of letters the proposition of a landlord to renew the lease, which is in technically complete form, with a single change, namely, the amount of rent, is accepted by the tenant, and there is no evidence to indicate that the parties intended that the execution of a formal instrument should be a condition precedent to the effectuation of a complete contract, an order in summary proceedings, awarding possession of the premises to the landlord on the theory that the tenant was holding over, will be reversed and a final order directed in favor of the tenant.

Appeal by a tenant from a directed verdict in favor of the landlord in summary proceedings instituted in the Municipal Court of the city of New York, borough of Manhattan, seventh district, for possession of premises on the theory of a holdover.

Maurice Meyer, for appellant.

Andrew Colvin, for respondent.

Bijur, J.  The tenant appeals upon the ground that the lease under which he had previously held the premises was extended by an interchange of letters which constituted a new contract.

On the 29th day of May, 1919, the landlord wrote the tenant:

"   *   *   *   we hereby notify you that said lease will terminate on September 30th, 1919, and, unless

Appellate Term, First Department, December, 1920.  [Vol. 113.

renewed as hereinafter stated, we shall require possession on that date.

" The rental for a renewal of said lease for a further term of two years will be Sixteen Hundred 00/100 Dollars per annum, payable monthly in advance.  We trust that you will decide to renew same  *  *  *."

On August 15, 1919, in reply to the landlord's letter the tenant wrote, saying in part: " Replying to your recent favor, and the instructions of your agent, to Mrs. Thompson, when he called last week, to advise you by the 15th, I have decided to renew the lease and will ask you to kindly send another slip for my signature, the others having been misplaced."

On August nineteenth the tenant received from the landlord two " renewal slips " which he signed, but, owing to the absence of a stenographer, did not immediately return one of them to the landlord.  In this state of affairs he received a letter dated August twenty-seventh, reading:

" Several days ago I mailed you renewal agreements for Apartment 2-c to be signed and returned by you.

"As you have failed to return them, these agreements are hereby cancelled and I hereby request that you return them to me.

" The apartment has now been let to other parties and it is too late for us to consider renewal with you."

It seems clear that the landlord's letter of the twenty-ninth of May was an offer to renew the lease. The tenant's letter of August fifteenth was an acceptance which closed the contract between the parties, whether or not they looked forward to a reduction to a different form of the agreement already complete. *Sanders* v. *Pottlitzer Bros. Fruit Co.*, 144 N. Y. 209.

It would be profitless to discuss the diverse aspects of the many cases which have arisen or might arise

involving the effect of a stipulation that an arrangement previously reached by the parties, whether orally or in writing, should be put into the shape of a formal contract, for in the instant case the proposition of the landlord was to *renew* a lease already in technically complete form with a single change, namely, the amount of rent. When this offer was accepted by the tenant the signing of a " renewal slip " or any other type of formal paper was therefore of no more significance or effect than the signing of a clean copy of an agreement to replace one that may have been interlined or physically mutilated. It seems too evident for argument that under these circumstances it would require evidence of extraordinary precision to form the basis of a finding that the parties intended the execution of the more formal instrument to be a condition precedent to the eventuation of a completed contract. There is no evidence at all in the record before us to indicate such an intention, and the order must, therefore, be reversed and final order directed in favor of the tenant. Inasmuch, however, as in a colloquy between appellant's counsel and the court the basis of our decision, which is also the subject matter of both briefs, was obscured and another point presented to the learned judge below, we feel that this reversal should be without costs.

Judgment reversed, without costs.