## C. H. POPE & CO., Inc., v. BIBB MFG. CO.

(District Court, S. D. New York. July 15, and August 3, 1921. On Motion to Set Aside Verdict, August 20, 1921.)

### On Motions to Direct Verdict.

1. **Sales** &#9094;87(3)—**Correspondence held to show sale according to first sample submitted.**

   Correspondence between buyer and seller *held* to show sale according to first sample submitted by seller, not according to later sample.

### On Motion to Set Aside Verdict.

2. **Sales** &#9094;89—**Letter as to sample after contract was closed held not to affect contract.**

   Where, after contract for yarn according to certain sample had been closed, seller wrote that it was sending another sample, stating, "We are simply submitting this to you for future reference so you may compare shipments with this yarn," but not warning buyer that the yarn referred to was not of the quality of the contract sample, such letter did not affect the parties' rights under the contract.

At Law. Action by the Bibb Manufacturing Company against C. H. Pope & Co., Inc. On motions to direct verdict, and on motion to set aside verdict. Verdict directed for plaintiff, and motion to set aside verdict denied.

Judgment affirmed 290 Fed. 586.

Root, Clarke, Buckner & Howland, of New York City (Grenville Clark, of New York City, and George S. Jones, of Macon, Ga., of counsel), for plaintiff.

Olcott, Bonynge, McManus & Ernst, of New York City (Terence J. McManus, of New York City, of counsel), for defendant.

### On Motions to Direct Verdict.

AUGUSTUS N. HAND, District Judge. This is an action to recover damages for failure to deliver tire fabric alleged to have been sold by defendant to plaintiff. All of the communications between the parties were in letters and telegrams. On September 29th, 1919, the plaintiff wrote the defendant asking whether the latter was in a position to quote on "high grade 23s/1 karded peeler yarn suitable for the manufacture of tire fabrics."

On October 1st, the defendant telegraphed to the plaintiff offering:

"Subject to sale fifty thousand twenty-three single karded peeler tire fabric section beans very high quality five thousand weekly beginning next week seventy-six cents Eastern spinning also two hundred twenty-three single karded peeler tire fabric tubes high grade Southern spinning Deliveries beginning January first ten per cent. weekly if interested believe can close subject approval sample which will be mailed immediately. ❋ ❋ ❋"

On October 1, defendant also wrote a letter to the plaintiff, reciting the telegram and saying:

"Unfortunately we do not happen to have a sample of the exact number representing either of these lots, but we are mailing to-night by special de-

---

livery to your Mr. Rigby at Columbus a sample tube of the 20/1 representing the quality of the yarn to be furnished by the Southern spinner. In the mean while we will endeavor to secure for you samples of 23/1 representing both lots."

On October 1st, the defendant wrote the plaintiff that it was mailing the latter:

" * * * A sample tube of 20/1 representing the quality of the yarn we can furnish you from a Southern spinner in 23/1 K. P. tubes. We are forwarding this sample on the request of your Mr. Anderson in order that you may test it out."

On October 2 the defendant telegraphed the plaintiff:

"Offer subject sale any part up to five hundred thousand pounds twenty-three single karded peeler tubes sixty-five cents guaranteed breaking strength eighty pounds or better. Delivery twenty thousand weekly commencing three weeks. Wire quick if interested."

On October 2, the plaintiff telegraphed the defendant that it had received the two telegrams offering 23 single karded peeler, and that:

"Your last proposition at sixty-five cents interesting but must see sample at our Columbus Georgia mill before we would buy or else have purchase contingent upon arrival of sample. * * *"

Up to this point, there had only been one sample sent and that was the sample tube of 20/1 referred to in defendant's letter of October 1st. It had been sent to the plaintiff's Columbus mill, as per notification in letters of October 1, 1919, to plaintiff at Macon, and to the plaintiff at Columbus, where the mill was situated, and on October 3d, the defendant telegraphed the plaintiff:

"Answering sample twenty-three single mailed to-day to Columbus Georgia mill for approval."

And on the same date defendant wrote the plaintiff at Columbus that they were sending:

"Samples of 23/1 K. P. tire fabric yarn which your Macon, Georgia, office instructed us to send you."

On October 6th, the plaintiff telegraphed the defendant:

"Have received samples of twenties single sent Columbus. Will take two hundred fifty thousand pounds of twenty-three single equal quality to this sample of twenties single at sixty-five cents per pound on Universal tubes less three per cent. tenth prox. Delivered Columbus, Georgia, shipments beginning twenty thousand weekly within three weeks or quicker if possible. Answer quick."

It is apparently clear at this point that the plaintiff was making an offer to purchase 250,000 pounds of 23 single of the quality of 20s which had been approved at its Columbus mill, specifying a three per cent. discount and a delivery of 20,000 weekly beginning within three weeks. In answer to this telegram the defendant, on the 6th of October, telegraphed the plaintiff as follows:

"Your wire. Have sold part original offering. Best can offer now subject mill acceptance quarter million like sample Foster wind sixty five your terms delivery ten thousand weekly commencing December. Wire shall we close if possible."

Here was a counter offer varying the terms as to delivery and using the term "like sample Foster wind." All the samples were "Foster wind," and the question is which sample the words "like sample" referred to.

On October 6th, the plaintiff again telegraphed to the defendant that they did not think they had treated them fairly in selling while negotiations were pending, and said:

"* * * We need the earlier deliveries and think you should commence in three weeks as first proposed. However if beginning December first is the best you can do will take two hundred and fifty thousand pounds like sample Foster wind at sixty-five cents less three per cent. delivered Columbus at a minimum of ten thousand pounds weekly. * * *"

On October 6th, plaintiff wrote defendant:

"The sample tube of 20's single yarn which you sent to our Columbus mill has been received, and after obtaining a report from our mill this morning we concluded to take 250,000 pounds of 23s single, equal quality |to this sample, and wired you as follows: [Quoting the wire heretofore mentioned containing plaintiff's offer.]"

This letter also refers to defendant's reply in which it states it had sold a part of the original offer and that the best they could do was to offer, subject to Mill's acceptance, 250,000 pounds "like sample submitted to us at 65 cents per pound," etc. This letter was acknowledged by defendant in its letter of October 9th, and no criticism is made of the statement in plaintiff's letter of October 6th that plaintiff was acting on basis of a report as to the 20s sample.

On October 8, 1919, the defendant telegraphed plaintiff.

"Answering mill just confirmed sale two hundred and fifty thousand pounds at sixty five cents mailing sale note. Many thanks."

I think this last telegram closed the transaction, and the only question is whether "like sample" referring to the quality of "20 single" specified in plaintiff's correspondence, or the sample of "23/1 k. p.," which was sent by the defendant later. The question is what the plaintiff was reasonably justified in supposing, and not what the defendant actually intended by the correspondence. The sample of 23s mailed on October 3d by the defendant had not reached the plaintiff when the counter offer of October 6th was made by the defendant to the plaintiff. The plaintiff's telegram of October 6th carefully specified the sample it was referring to, and the counter offer gave the plaintiff no reason to suppose that it varied plaintiff's offer, except as to dates and instalments to be delivered.

In Plaintiff's Exhibit 27, a letter dated October 21, 1919, to the defendant, plaintiff says:

"As to breaking strength, 80 pounds minimum at the temperature and relative humidity mentioned in our order is as low as we can use, and is below the relative breaking strength of your sample of 20s/1, on basis of which this order was placed."

In plaintiff's letter of October 22, 1919, Exhibit 28, they say:

"We want to say further that if all of this yarn comes up to the sample of 20s/1, on basis of which all of the orders have been placed, it will be fully up to our requirements. * * *"

Not until Altreuter, for whom the defendant was acting, received a letter from Delburg Cotton Mill Company, which were the manufacturers, does it appear anywhere that the mill which defendant relied upon to furnish the tire fabric was unwilling to furnish merchandise of the quality of the sample of 20/1s which was first submitted. On October 30th, for the first time in its correspondence the defendant took the position that it had never contracted to sell merchandise of the sample 20s/1 on which plaintiff made its offer. I think the later letters of the plaintiff to the defendant, which were not objected to, as to the quality of the sample referred to, bore out the plaintiff's contention that it was justified in supposing that "like sample" meant like the sample of 20s/1 first submitted. The fact that in defendant's telegram of October 8th (Plaintiff's Exhibit 19) it said, "Mailing sale note," did not prevent the completion of the contract by telegrams.

In the case of Sanders v. Pottlizer Brothers Co., 144 N. Y. 209, 39 N. E. 75, 29 L. R. A. 431, 43 Am. St. Rep. 757, the letter from the plaintiff said:

"Letter received. Will accept conditions. If satisfactory, answer, and will forward contract."

The defendant replied:

"All right; send contract as stated in our message."

The Circuit Court of Appeals held that:

" * * * A stipulation to reduce a valid written contract to some other form cannot be used for the purpose of imposing upon either party additional burdens or obligations, or of evading the performance of those things which the parties have mutually agreed upon by such means as made the promise or assent binding in law. * * * "

It is also unimportant what particular lot of yarn the 20 sample represented, if, as I believe to have been the case, the defendant should reasonably be held from its language to have contracted to supply a yarn of that quality. Accordingly the motion of the plaintiff for the direction of a verdict on the first cause of action will have to be granted, and the motion of the defendant for the direction of a verdict must be denied, except as to the second cause of action. The verdict will be for the amount of $75,400, with interest down to the date when the various motions are formally disposed of upon the record.

The within opinion is to indicate the procedure, and before the motions are formally disposed of, the clerk and counsel should attend.

### Decision on Motions for Direction of Verdict.

[1] The court having filed its opinion in this case on the 15th day of July, 1921, and motions having been theretofore made, on which decision was reserved by consent for the direction of a verdict in favor of the defendant on both causes of action, and for the dismissal of the first and second causes of action, and for leave to go to the jury, the said motions and each of them are denied, and an exception granted to the defendant in respect to each denial thereof, except that the motion to direct a verdict in favor of the defendant on the second cause of action and for the dismissal of the second cause of action is granted.

The plaintiff's motion for the direction of a verdict is granted as to the first cause of action, and denied so far as it relates to the second cause of action, and the motion of the plaintiff for the direction of a verdict on the first cause of action for the recovery of $75,400, plus interest on the separate items making up the sum of $75,400, said interest amounting to this date to $6,625.93, is granted, and a verdict ordered accordingly. Counsel may by stipulation change the amount of the said interest, if it be found incorrect on a new computation.

Mr. McManus: I except to your honor's ruling directing a verdict. I move to set aside the verdict on the grounds that it is against the law, against the evidence, and against the weight of evidence, on the ground of error in the admission and exclusion of evidence, and upon all the other grounds mentioned in section 999 of the Code of Civil Procedure, except inadequacy of damages. I also move for a new trial upon the same grounds, and upon the further ground that defendant was denied a trial by jury in violation of the provisions of the seventh article of the Amendments to the federal Constitution.

In connection with this motion for a new trial upon the ground that a question for the jury was presented, I want to call your honor's attention to this circumstance: That in excluding from consideration the testimony given by the plaintiff on the stand to the effect that after the receipt of the telegram from the defendant on October 8th, he on the same day prepared and forwarded specifications of the contract in which he set up the details of the manner in which he wanted the yarn to be made up, and when he gave further testimony that in the event of the refusal of the defendant or the defendant's manufacturer to agree to comply with those specifications or to furnish the materials in accordance with those specifications, rather, he would have felt justified in rejecting the contract, that in excluding that circumstance from your honor's consideration in the opinion rendered by you, your honor in a measure usurped the functions of the jury. Now I ask leave to submit a memorandum upon the motion for a new trial, upon the ground that a question for the jury was presented.

The Court: I will allow you to do that.

Mr. McManus: I move for 60 days' stay of execution after the entry of judgment.

The Court: Granted.

## On Motion to Set Aside Verdict.

[2] The statement by defendants in their letter of October 8th was this:

"We are sending you under separate cover partially filled tube from which the sample reeling which we sent you was taken. We are simply submitting this to you for future reference so you may compare shipments with this yarn."

The letter from which the foregoing was an extract was directed to the plaintiff at Macon, Ga., and was sent and received after the contract had been closed. Moreover, it did not warn the plaintiff that the yarn referred to was not of the quality of the 20s sample. The plaintiff's mill, where the yarn had been tested, was at Columbus, and

the letter referring to the sample sent for comparison with shipments which were not to begin for some time was not calculated to warn the plaintiff that the defendant was contracting as to a quality of yarn different from that of the 20s sample or to call for an immediate test.

We come back to the old question whether the words, "like sample Foster wind," were ambiguous and rendered the case here like that of the "Peerless." The difference between this case and Raffles v. Wichelhouse, Hurl. & C. 906, where the two ships named "Peerless" were involved, is that here plaintiff in the telegram of October 6th made it plain beyond a peradventure that the quality of yarn contracted for was like that of the 20s which had been sent to the Columbus mill. The defendant gave the plaintiff no reason to suppose that it was using the words "like sample Foster wind" in a different sense from that used by the plaintiff in its telegram of the same day. That the plaintiff continued to use the words "like sample Foster wind" as relating to the 20s sample is further evident from plaintiff's letter of October 6th when it says:

"In view of our later exchange of telegrams, we can do nothing until we, hear from your sample. It ought to be in Columbus to-day. * * *"

The same continued use is evident from the letter of plaintiff dated October 6th written later in the day where the receipt of the 20s sample· is specifically mentioned, and the telegram of October 6th containing its offer and that of October 6th accepting defendant's counter offer are set forth at length.

Plaintiff in its letters of October 21st and 22d referred to the sample of 20s as defining the quality contracted for, and these were acknowledged by defendant without a suggestion that the agreement was for another kind of yarn. If there was any initial justification for using the words, "like sample Foster wind," as referring to a sample other than that of the 20s the defendant had repeatedly been informed that such was not the meaning that the plaintiff attached to these words and had said nothing except to send a sample "for future reference so you may compare shipments with this yarn." The letter did not say that it was of different strength and never suggested that plaintiff's continued interpretation of the subject-matter of the contract was erroneous.

The motion by the defendant to set aside the verdict is denied.