Nathaniel T. Helmah, J.
In this action for specific performance plaintiff, the proposed purchaser of an apartment building, seeks to enforce the terms of a written binder agreement exe *598 anted by the parties on April 23, "1961. In response to a Times advertisement, plaintiff had communicated with the defendants, and upon receiving details concerning the location and "size 'of the premises, the layout of apartments, the mortgage liens, taxes, income and expenses, proceeded to negotiate for the purchase of the property. On April 23, 1961 plaintiff brought with him to defendants ’ home three copies of a printed form of ‘ ‘ Binder Agreement ’ ’, which was filled in and typed by one of the defendants with the approval of plaintiff and the other defendant, a co-owner of the property. The agreement was then executed by all the parties.
After providing for a $500 deposit, the agreement recited the purchase price of $165,000, $3,000 cash to be paid on the signing of a formal contract, balance unpaid on two mortgages subject to which purchaser was to take title, with details as to'amortization and interest payments, including the due date of each. There followed a statement of the amount of a third purchase-money mortgage required to make "up the purchase price, which purchaser undertook to execute on closing with a provision for payment of interest thereon until 1970, the principal to be prepayable in April 1965, or prior thereto. The amount of cash on closing to make up the total purchase price of $165,000, was fixed at $37,000.
Provision was made for a formal contract on the form used by the Title Guarantee and Trust Co., to be executed on a date specified, and closing was to be held at the office of sellers’ attorney on June 1, 1961. The customary references to rights of tenants and mutual representation of no brokerage, likewise were included.
After receiving plaintiff’s $500 check' as a deposit, defendants returned it a few days later with a letter advising plaintiff that defendants had decided not to sell the property. The writing upon which the action is predicated contains every essential of a binding contract. In De Goode v. Burton (141 App. Div. 22, 25) the essential elements of a valid contract to sell real property was thus stated: “ The rule is Avell established that a note or memorandum sufficient to take a contract of sale out of the operation of the Statute of Frauds must state the whole contract with reasonable certainty so that the substance thereof may be made to appear from the record itself without recourse to parol evidence.”
In Pelletreau v. Brennan (113 App. Div. 806), cited, also, in Fusco v. Coffey (48 N. Y. S. 2d 740) and in Matter of Degenkolb (113 N. Y. S. 2d 880) instruments similar to the binder agreement in question, were held to be sufficient to bind the seller.
*599 It is well established that a provision in a written agreement for the execution of a more formal agreement, does not impair its effectiveness as a binding contract (Sanders v. Pottlitzer Bros. Fruit Co., 144 N. Y. 209; Zlobinsky v. Broadlane Realty Corp., 129 N. Y. S. 2d 818). Defendants attempted at the trial to prove by oral testimony that the subject of amortization with relation to the third mortgage was left open for later discussion by the attorneys for the parties. This plaintiff denied and the court accepts plaintiff’s version of this phase of the evidence. In any event, this would constitute a complete variance of the specific language of the writing, which provided for interest payments only, as to the third mortgage (Lasky v. Rubel Corp., 303 N. Y. 69). In the same vein, testimony by defendants that the validity of the agreement was conditioned by the parties on subsequent approval by their attorneys, is likewise unsupported by the evidence, and the court on that issue finds for the plaintiff (Thomas v. Scutt, 127 N. Y. 133). “ ‘ Ordinarily, the signer of a deed or other instrument expressive of a jural act, is conclusively bound thereby * * *. If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case, the writing binds him.’ ” (9 Wigmore, Evidence, § 2416, pp. 55-56.)
Judgment will accordingly be granted to the plaintiff for the relief demanded in the complaint. This constitutes the decision of the court pursuant to section 440 of the Civil Practice Act,