## NORRIS, Inc., v. M. H. REED & CO.

(Circuit Court of Appeals, Fifth Circuit. January 18, 1922.)

No. 3620.

1. **Sales ☞32—Contract made by correspondence cannot be avoided by insisting on different terms in formal written contract.**

   Where a valid contract of sale has been made by the exchange of letters or telegrams, but with the understanding that it shall be embodied in a formal writing signed by the parties, neither party can defeat it or avoid its obligations by insisting on other or different terms in such writing and refusing otherwise to sign it.

2. **Sales ☞377—Petition held to authorize damages based on market price at time of delivery.**

   In an action by a seller for refusal by the purchaser to receive and pay for the goods contracted for, the petition *held* sufficient to authorize the recovery of damages measured by the difference between the contract price and the market price at the time fixed for delivery, though it prayed for the difference between the contract price and the market price at the time the contract was repudiated, "and for all other relief" to which plaintiff might be entitled.

3. **Appearance ☞19(1)—Filing demurrer and pleading to merits held to constitute general appearance.**

   A defendant not served, and who appeared specially, but filed a demurrer and numerous special exceptions and pleaded to the merits, *held* to have waived objection to the jurisdiction over his person.

In Error to the District Court of the United States for the Austin Division of the Western District of Texas; Duval West, Judge.

Action at law by M. H. Reed & Co. against Norris, Incorporated. Judgment for plaintiff, and defendant brings error. Affirmed.

T. B. McCormick, of Dallas, Tex. (Francis Marion Etheridge, Joseph Manson McCormick, and Henry Louie Bromberg, all of Dallas, Tex., on the brief), for plaintiff in error.

Dudley K. Woodward, Jr., of Austin, Tex. (Victor L. Brooks and James H. Hart, both of Austin, Tex., on the brief), for defendant in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

BRYAN, Circuit Judge. November 17, 1919, defendant in error, herein called plaintiff, brought suit in a state court against plaintiff in error, herein called defendant, to recover damages for breach of a contract whereby it is alleged plaintiff agreed to sell and defendant agreed to buy three carloads of pecans, one carload to be delivered in December, 1919, and two carloads to be delivered in January, 1920, at the price of 18½ cents per pound. The petition alleged that on November 7, 1919, the defendant repudiated said contract, and that the market value of the pecans was then 12 cents per pound. Plaintiff prayed that—

"he have judgment for his damages in the sum of $5,850, as aforesaid, for his costs of suit, and for all other relief to which he may be entitled in the premises."

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Defendant being a nonresident of Texas, personal service was not had, but a certified copy of plaintiff's petition was served upon it, and by writs of garnishment served upon residents of Texas within the jurisdiction where the suit was brought funds of defendant aggregating $1,960.27 were impounded. Thereafter the defendant presented to the state court a petition for removal to the United States District Court, and appearing in the latter court, "specially and for the sole and only purpose of protecting its title to the property sought to be impounded by proceedings in the nature of proceedings in rem herein, and declining to appear generally, or for any other purpose than such special purpose," filed a general demurrer, and an answer denying the allegations of the plaintiff's petition, and subsequently, while in like manner reciting that it appeared specially, filed numerous exceptions to the petition.

In the month of October, 1919, correspondence took place between the parties as follows:

On the 7th of that month the plaintiff wrote a letter to the defendant, stating that he had pecans to sell in carload lots, and soliciting an order, which letter defendant replied to on the following day, stating that it was in the market for pecans, requesting plaintiff to send samples, and to quote prices on three carloads, one to be delivered at once, one in March, and one in May. On the 13th plaintiff acknowledged receipt of defendant's letter, stated that he did not have storage facilities sufficient to enable him to carry the pecans until March and May, but that he could ship one carload at once, and two carloads in December. He further stated that he was sending samples, quoted prices, and expressed the hope that defendant would send an order by telegram. On the 16th defendant replied to plaintiff's letter of the 13th, stating that it had received the samples of pecans, but found that the meat did not entirely fill out the shells, and that there was a quantity of faulty nuts, and then continued:

"Counting the entire amount cracked, including the bad ones, the yield of meat is only 38 per cent. We should procure from seedling pecans at least 40 per cent. meats, and we are therefore reluctant in placing an order with you. If you can supply us with the quality we require, we can use two cars in December at the price quoted, but prefer one car shipped in December and one in January."

October 20, 1919, the parties exchanged the following telegrams: From plaintiff to defendant:

"Referring our letter thirteenth yours sixteenth suggest you let us book three cars price quoted shipment one car each October, December, January. Leave the quality to us and we will guarantee good shelling stock today. Wire acceptance."

From defendant to plaintiff:

"Your wire even date. Will take three cars pecans eighteen one half cents f. o. b. your city, packed in double bags, one car December, two cars January. Wire."

October 21, 1919, plaintiff sent to defendant a telegram reading as follows:

"Confirm sale three cars. Mailing contracts can not you use Oct. car."

These telegrams were promptly delivered as sent. Immediately thereafter the defendant inclosed a signed order in which the following appeared: "Crack guaranteed not less than 40 per cent;" while the plaintiff wrote a letter confirming the sale and stating: "Pecans guaranteed to be good shelling stock," etc. Thereafter defendant wrote to plaintiff, complaining that the contract sent by the latter did not include the guaranty, while the plaintiff, on the other hand, objected to the guaranty which defendant had included in its order, and which is above quoted. The parties continued to correspond with each other for several days, and not being able to agree upon the form of a contract which they were willing to sign, defendant finally on November 7, 1919, sent to plaintiff a telegram reading as follows:

"We have consummated no contract with you. Samples not up to representation. Do not ship us any goods."

It was admitted that a minimum carload of pecans would weigh 30,000 pounds. There was evidence that the market price of pecans of the quality ordered was from 12 to 16 cents per pound in December, 1919, and 12 cents per pound in January, 1920.

There was testimony for defendant that it received a sample of pecans from plaintiff about October 28th, and that a chemist's report showed that only 36 per cent. were good. The defendant used pecans in its business of candy manufacturer, but claimed that it could not profitably use pecans such as the sample sent by plaintiff contained. On the other hand, there was testimony for plaintiff that the pecans were of good quality, and contained a greater percentage of meat than demanded. The court charged the jury to find for defendant, if they believed that the minds of the parties did not fully meet, or that it was the intention of either that no contract should be considered as consummated until a formal written contract or further writing should be signed, or if they believed that defendant understood and intended that there should be included in the contract a guaranty that the pecans should contain at least 40 per cent. meats, or if they believed the contract was based upon samples which should be satisfactory to the defendant. The foregoing charges were given at defendant's request. As to the measure of damages, the court instructed the jury that it would be the difference between the contract price and the market price at the times specified for delivery. Plaintiff had verdict and judgment for $2,925.

[1] The principal contention, presented by numerous assignments of error, is that the minds of the parties never met, and that consequently no contract was ever consummated. It is urged that the telegrams, whether considered separately or in connection with the letters to which reference is therein made, amounted to nothing more than negotiations. The letters of October 7th and 8th are undoubtedly of that character, and have been referred to solely for the purpose of showing the manner in which the parties began their dealings with each other. Plaintiff's letter of October 13th is likewise unimportant, because the offer of sale therein contained was not accepted. Indeed, the only significance to be attached to defendant's letter of October 16th is the statement that it desired a guaranty that the pecans would

yield 40 per cent. meats. The negotiations became important upon the sending of plaintiff's telegram of October 20th, in which the defendant was in effect requested not to insist upon its requirement for pecans containing 40 per cent. meats, but instead of that to rely on the warranty of "good shelling stock," which plaintiff then definitely offered to make. Defendant's telegram in reply was in direct response, and constituted a counter offer to buy three carloads of pecans at a designated price, and, it seems to us, to forego the requirement of quality theretofore insisted upon, and to rely instead upon plaintiff's warranty as to quality. This definite offer by the defendant was accepted unconditionally and unequivocally by the plaintiff, and we are of opinion that a binding contract resulted. The parties themselves apparently intended to evidence their contract by telegrams. When the plaintiff submitted his offer, he requested the defendant to "wire acceptance," and in submitting its counter offer the defendant made the same request. A binding contract having been entered into, neither party could defeat it or evade its obligations by refusing thereafter to sign a formal writing evidencing it, or by tendering to the other for execution drafts of a contract containing different or other terms and provisions.

In Sanders v. Pottlitzer Bros. Fruit Co., 144 N. Y. 209, 39 N. E. 75, 29 L. R. A. 431, 43 Am. St. Rep. 757, it is well said:

"Any other rule would always permit a party who has entered into a contract like this, through letters and telegraphic messages, to violate it whenever the understanding was that it should be reduced to another written form, by simply suggesting other and additional terms and conditions. If this were the rule, the contract would never be completed in cases where by changes in the market, or other events occurring subsequent to the written negotiations, it became to the interest of either party to adopt that course in order to escape or evade obligations incurred in the ordinary course of commercial business. A stipulation to reduce a valid written contract to some other form cannot be used for the purpose of imposing upon either party additional burdens or obligations, or of evading the performance of those things which the parties have mutually agreed upon by such means as made the promise or assent binding in law."

Where the meaning of a contract is obscure, and its construction depends upon extrinsic facts, the question of interpretation may be submitted to a jury, and it was doubtless upon that theory that the trial court left it to the jury in this case to find the intention of defendant—whether plaintiff guaranteed the quality of the pecans, and whether the contract was based upon samples. It is not contended that the question was not fairly submitted to the jury, but that the evidence considered as a whole did not warrant a verdict for the plaintiff.

[2] The charge of the court, that the measure of damages was the difference between the contract price and the market price at the times specified in the contract for delivery, is assigned as error. It is conceded that the true measure of damages was as declared by the court, but it is insisted that plaintiff was precluded from recovery, because he sued for the difference between the contract price and the market price as of November 7, 1919, which was the date upon which the defendant repudiated the contract. Special damages were not pleaded, and we are of opinion that general damages are recoverable under the

petition as framed. Roehm v. Horst, 178 U. S. 14, 20 Sup. Ct. 780, 44 L. Ed. 953; 17 C. J. 1000; 8 R. C. L. 611; 23 R. C. L. 1412; Fish v. Sadler (Tex. Civ. App.) 155 S. W. 1185.

[3] An assignment of error is based upon the fact that the judgment is a personal one and in excess of the amounts impounded by the writs of the garnishment. Although defendant recited that it appeared specially for the purpose of protecting its property, it filed a general demurrer and numerous special exceptions, and pleaded to the merits. We are of opinion that by so doing it waived its objection to the jurisdiction of the court. Thames & Mersey Insurance Co. v. United States, 237 U. S. 19, 35 Sup. Ct. 496, 59 L. Ed. 821, Ann. Cas. 1915D, 1087.

Error is not made to appear by any of the assignments, and the judgment is affirmed.

KING, Circuit Judge (concurring). The evidence in this case, in my opinion, left it a disputable question whether a contract was finally concluded between the parties by the telegrams exchanged, or was to be thereafter consummated by a written contract. The court therefore properly submitted this question to the jury. Williston on Contracts, Section 28; United States v. P. J. Carlin Construction Co., 224 Fed. 859, 862, 138 C. C. A. 449; Whitted & Co. v. Fairfield Cotton Mills, 210 Fed. 725, 732, 128 C. C. A. 219; Jenkins & Reynolds Co. v. Alpena Portland Cement Co., 147 Fed. 641, 656, 77 C. C. A. 625.

There was sufficient evidence to warrant the verdict.