## FRANK BOWMAN CO. v. LECATO.

(Circuit Court of Appeals, Fourth Circuit. July 3, 1923.)

No. 2100.

1. **Sales ⬸32—Contract by correspondence binding.**

By cablegrams' and letters the parties agreed on all the terms of a sale by defendant to plaintiff of 15 cars of potatoes, to be shipped by defendant to Havana, intending thereafter to express the contract in formal writing. Plaintiff sent to defendant for execution a standard form of contract in use in the trade, which conformed to the agreement, and also check for $3,000, as a required advance payment. Defendant kept these for three weeks, during a rising market, and then returned them without stating any objection to the form of contract and refused to make shipment. *Held,* that a valid contract of sale was made by the correspondence and that defendant was liable for its breach.

2. **Sales ⬸103—Reduction of prior agreement to writing; objection to proposed form not ground for rescission.**

When parties make an agreement by correspondence for the sale and purchase of property, complete in its details, with the understanding that it shall be afterward expressed in a formal document, a mere objection by the seller to the form proposed by the buyer, accompanied by the submission and suggestion of a different form, can never warrant instant rescission, without at least a request for correction.

In Error to the District Court of the United States for the Eastern District of Virginia, at Norfolk; D. Lawrence Groner, Judge.

Action at law by the Frank Bowman Company against R. U. Lecato Judgment for defendant, and plaintiff brings error. Reversed.

D. Arthur Kelsey and J. Edward Cole, both of Norfolk, Va. (Cole Cole & Cole and Oast, Kelsey & Jett, all of Norfolk, Va., on the brief), for plaintiff in error.

J. Brooks Mapp, of Keller, Va., and Thomas H. Willcox, of Norfolk, Va., for defendant in error.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

WOODS, Circuit Judge. [1] Frank Bowman Company, a Cuban corporation doing business in Havana, Cuba, brought this action against R. U. Lecato, dealer in potatoes, strawberries, and onions at Painter, Va., to recover damages for breach of a contract to sell 15 cars of potatoes. The case turned on whether a complete contract was made by the parties. The plaintiff requested the following instruction:

"The court instructs the jury that cablegrams read in connection with the correspondence between the plaintiff and defendant, which have been offered in evidence in this case, contain a definite offer by the plaintiff and an unconditional acceptance by the defendant, and when completed by the tender of the required deposit resulted in a binding contract which

could not be defeated by either party subsequently refusing to sign a formal writing evidencing such contract."

This was in substance a request to instruct the jury to find for the plaintiff. We are to determine whether the district judge erred in refusing the request and submitting to the jury as an issue made by the evidence whether the parties entered into a binding contract.

Negotiations were opened by the defendant Lecato on February 20, 1920, by letter stating his price for potatoes delivered in June and soliciting business of plaintiff. On March 30th plaintiff replied saying prices given were out of line with other quotations. On April 6th defendant wrote again concerning prices and other matters relating to potato trade and expressed the hope of doing business with plaintiff. Plaintiff wrote again on April 13th saying:

"We now think we would like to take on a few cars and figuring on a freight rate of $2.04 via the Ferry."

This letter confirmed a cablegram asking for quotations on "Hoosiers prompt shipment" and on "Cobblers shipment June and July." Defendant answered on April 16th by cable:

"Offer fifteen cars shipment July first to fifteenth seven eighty delivered dollar barrel deposit."

Plaintiff sent by cable this acceptance:

"Accept fifteen cars shipment July first to fifteenth mail contract will remit you three thousand dollars New York exchange soon as receive signed contract."

Defendant sent a letter of same date confirming his offer by cable. On same day plaintiff wrote:

"This confirms exchange of cables between us, this date, copies attached. "We understand that we purchased from you, shipments to be made between July 1st and 15th, 1920, fifteen (15) cars potatoes at $7.80 per barrel c. i. f. Havana, each car to contain 200 or more barrels of potatoes. All shipments are to be made via the Ferry. "If on receipt of this letter you have not already mailed us contract. please do so and as soon as we receive contract in duplicate signed by you, we will send one copy back to you duly signed, and will also remit you New York Exchange for $3,000 to your order."

There can be no dispute that this correspondence was intended to constitute, and did constitute, a completed contract binding on both parties. The quantity and kind of potatoes, the freight rate, the date of delivery, the price and the deposit as security to the seller were all agreed upon. As no credit was stated, the contract meant cash to the seller on delivery of the goods to the buyer. The signing of a formal contract was contemplated as a memorial of the sale and purchase.

On April 16th defendant wrote a letter in which he said:

"Please find inclosed contract covering fifteen cars potatoes. Please forward me promptly three thousand dollars to apply on contract."

The paper inclosed was not signed by defendant and was nothing more than a proposed form of contract. It provided that the date of shipment should be subject to weather conditions. It contained also these provisions:

"The purchaser further agrees to accept and pay promptly all sight drafts made by the seller for open shipments of said potatoes, supported by original bill lading.

"It is the understanding of this contract, should there be any advanced charges in freight rate above the present rate, same will be chargeable to the purchaser."

The provision that defendant should have the privilege of delaying shipment for unfavorable weather was not contemplated by the agreement. The paragraph of the proposed formal writing first quoted as to sight draft and bill of lading was in precise accord with the contract that the price should be paid cash on delivery. The second paragraph quoted was subject to objection in that it did not specify the freight rate which had been mentioned in the correspondence as $2.04.

On receipt of the letter and the form plaintiff wrote, on May 6th:

"Replying to yours of April 21st, we inclose you herewith New York Exchange for three thousand dollars to apply against contract covering purchase as per exchange of cables of April 16th, of fifteen (15) cars (three thousand barrels of potatoes), shipment from Virginia points July 1 to 15, 1920.

"The contract inclosed in your letter of the 21st of April is not a fair contract for either buyer or seller. We have therefore taken the liberty of substituting the contract as used by the Eastern Shore of Virginia Produce Exchange and you will note that although they only call for fifty cents per barrel to be paid on the signing of the contract and fifty cents per barrel to be paid before June 1, 1920, we inclose you three thousand dollars without waiting for June 1st to pay you the $1,500.00 which would be coming to you on that date, as per contract of the Eastern Shore of Virginia Produce Exchange.

"Your contract is weak in the paragraph referring to freight rates. You virtually say in your contract that any variations in the present freight rate is for buyers account, but as you do not specify the freight rate, no basis has been established for a variation and you will note that in the Eastern Shore of Virginia Produce Exchange contract, they fix a freight rate of $2.04 from Virginia points."

The plaintiff did not sign the form sent by it, giving as a reason that it thought the seller should first sign. The check for $3,000 inclosed was indorsed as follows:

"Earnest money paid R. U. Lecato, of Painter, Va.; against a contract calling for fifteen (15) cars (three thousand barrels potatoes) to be shipped between July 1 and July 15, 1920, at the price of $7.80 per barrel CIF Havana, via Key West, Fla., via Ferry Key West to Havana. Variations in freight rate for buyers account."

The only specific objection made by plaintiff to the formal contract proposed by defendant, that it did not indicate the freight rate, was well founded, for the correspondence mentioned $2.04 as the contemplated freight rate. Plaintiff's letter of May 6th, so far from being a repudiation of the contract of sale, was an express statement of the purchase and a reaffirmance of it. While criticizing the form proposed by defendant, plaintiff did not express refusal to sign it if defendant insisted on it.

The defendant held the letter and form of contract proposed by plaintiff and the check for $3,000, sent on May 6th, without objection or acknowledgment. On May 25th plaintiff cabled, and on May 26th wrote, asking acknowledgment. On May 28th, after holding the check

and form of contract proposed by plaintiff in silence for about three weeks, defendant wrote:

"Replying to your cable of the 26th in regard to contract for 3,000 barrels potatoes. Have been quite busy loading strawberries and really haven't had time to look same over carefully until I received your cable.

"I am sorry to say that I could not accept the same, and I am compelled to return your check for three thousand dollars and contract."

Responding to a cable notice that plaintiff would charge him with difference in cost of potatoes, defendant again refused to ship the potatoes, giving as his only reason that plaintiff had refused to sign the form of contract proposed by him and had proposed another which was not satisfactory. In the meantime there had been a very material and significant advance in the price of potatoes.

The excuse given by defendant for holding plaintiff's check and proposed form of contract is too flimsy for consideration. Defendant stated no objection to the form of contract proposed by plaintiff and gave no reason for the repudiation of the contract of sale and purchase fully proved by the correspondence. On the contrary, defendant's letter of May 28th, above quoted, proves that the form of contract proposed by plaintiff had nothing to do with his delay in returning the check and his subsequent repudiation of the sale, for in this letter he says he had held the proposed form of contract with the check without even a careful look over it.

The plaintiff was obliged to hold $3,000 in bank to meet its $3,000 check for the three weeks it was held by defendant, and was not even given an opportunity to meet any objection to the form of contract it proposed or to yield its objection to that proposed by defendant. Not until the trial did the defendant undertake to specify his objections to the form of contract sent to him by plaintiff. The objections then attempted, if not pretentious, were without substance, as will appear by examination of them. First defendant testified as to the form of contract proposed by him and by plaintiff, "Lecato contract guaranteed to conform to U. S. grade 1, Bowman's guaranteed good merchantable Irish cobblers, spring crop, current year." No difference in the grades described in the two forms is pointed out, and the correspondence showed that the potatoes contracted for were for the spring crop of the current year. He next objected:

"Bowman's contract provides that shipment via Ferry, Key West. Lecato could have shipped by boat for less money freight."

The correspondence shows that the shipment was to be via Key West; and the defendant wrote plaintiff it would "have to furnish booking"—that is, indicate route. The provision in plaintiff's form of contract therefore in this respect strictly conformed to the agreement. He next said:

"Under Lecato contract, if weather bad, could have shipped after the 15th of July; under Bowman's could not. That is, if the weather had been bad, that I could have shipped later."

By the correspondence the defendant had unqualifiedly proposed and contracted that shipment should be between July 1st and 15th, and

therefore he had no right to insert a clause conferring the privilege of shipping later on account of unfavorable weather. Finally the defendant said:

"Lecato's contract provides for sight draft supported by original bill of lading, and Bowman's does not. That is the most important point in it—the draft part of it. I could use those drafts, and in Bowman's I could not."

The provision as to payment in the form prepared by plaintiff was that it should "pay the balance of the purchase price promptly upon receipt of the invoices." Construing the provision most favorably to plaintiff, it certainly bound him to pay upon presentation of the bill of lading showing that the potatoes contracted for had been shipped as provided in defendant's proposed form. The district judge told the jury he could see no difference between the two forms in this respect; and there was none.

The case comes to this: The plaintiff and defendant made by cablegrams and letters a contract for the sale of potatoes complete in all its terms, intending thereafter to express the contract in a formal writing. In the form of contract proposed by defendant there was an omission as to the freight rate and a provision as to date of shipment contrary to his contract evidenced by the correspondence, which justified the objection made by plaintiff. The form proposed by plaintiff expressed substantially every provision of the contract made by the correspondence. There was no reason for defendant to reject and repudiate his contract of sale. Defendant held the form of contract proposed by plaintiff and plaintiff's check for $3,000 for three weeks without objection, and that, too, on a rising market.

There is no doubt that the custom of the trade was to embody such contracts of sale in a formal writing and that both parties desired and understood a formal contract was to be signed. But it is equally clear that both parties bound themselves to sign a formal document embodying the contract when requested to do so. The defendant could not therefore escape liability by repudiating the contract and refusing to sign. 13 C. J. 392. The rule is thus laid down in Sanders v. Pottlitzer Bros. Co., 144 N. Y. 209, 39 N. E. 75, 29 L. R. A. 431, 43 Am. St. Rep. 757:

"A contract to make and execute a certain written agreement, the terms of which are mutually understood and agreed upon, is, in all respects, as valid and obligatory, where no statutory objection interposes, as the written contract itself would be, if executed. If, therefore, it should appear that the minds of the parties had met; that a proposition for a contract had been made by one party and accepted by the other; that the terms of this contract were in all respects definitely understood and agreed upon; and that a part of the mutual understanding was, that a written contract, embodying these terms, should be drawn and executed by the parties —this is an obligatory contract, which neither party is at liberty to refuse to perform."

"Any other rule would always permit a party who has entered into a contract like this through letters and telegraphic messages to violate it whenever the understanding was that it should be reduced to another written form, by simply suggesting other and additional terms and conditions. If this were the rule, the contract would never be completed in cases where by changes in the market or other events occurring subsequent

to the written negotiations it became the interest of either party to adopt that course in order to escape and evade obligations incurred in the ordinary course of commercial business."

This rule has been restated and applied in this court and in the Supreme Court of Appeals of Virginia. Whitted & Co. v. Fairfield Cotton Mills (4th Cir.) 210 Fed. 725, 732, 128 C. C. A. 219; United States v. Carlin Const. Co. (C. C. A.) 224 Fed. 859, 863; Norris v. Reed (C. C. A.) 278 Fed. 19; Hughes v. Burwell, 113 Va. 598, 75 S. E. 230.

[2] When parties make an agreement by correspondence for the sale and purchase of property complete in its details, with the understanding that it shall be afterwards expressed in a formal document, a mere objection by one to the form proposed by the other accompanied by the submission and suggestion of a different form can never warrant instant rescission. Even if the difference in the forms were material and that proposed by defendant were correct, good faith calls at the very least for a request for correction with notice that if the correction were not made the contract would be rescinded. We have recently so held in New England Oil Corporation v. Island Oil Marketing Corporation, 288 Fed. 961, filed April 10, 1923:

"But, even if plaintiff in its letter did mistake its rights in this respect, that would not have been such an anticipatory breach as would warrant the defendant in rescinding. It was perfectly manifest from plaintiff's letter that it was intending to act under the contracts and not in repudiation of them. The letters may have called for a request for correction of plaintiff's construction, but they did not warrant rescission. Dingley v. Oler, 117 U. S. 490; Hoggson Bros. v. First Nat. Bank, 231 Fed. 869; Pels v. Saxony Co. (4th Cir.) 287 Fed. 282."

The evidence is conclusive that defendant made the contract of sale alleged by plaintiff; that there was no ground for rescission; and that defendant in view of all the facts is estopped by retention of a part of the purchase money for three weeks without objection or reasonable explanation. The district judge should have given the instruction asked for by plaintiff.

Reversed.