### RICABY et al. v. McCRORY STORES CORPORATION.

Circuit Court of Appeals, Sixth Circuit.
October 12, 1929.

No. 5384.

16

Frank M. Cobourn and Geo. D. Welles, both of Toledo, Ohio (Frank S. Lewis, Robert Newbegin, Tracy, Chapman & Welles, and Doyle & Lewis, all of Toledo, Ohio, on the brief), for appellants.

H. W. Fraser, of Toledo, Ohio (E. H. Rhoades, Jr., H. G. Wall, Fraser, Hiett, Wall & Effler and Rhoades & Rhoades, all of Toledo, Ohio, on the brief), for appellee.

Before DENISON, HICKS, and HICKENLOOPER, Circuit Judges.

DENISON, Circuit Judge (after stating the case). The first portion of clause 8 gave to Ricaby an option, which might be of little or of great value, according to Ricaby's success in making a bargain with Lamson, in a situation where neither was under any legal compulsion to agree. For extreme example, if Ricaby could secure the surrender of the Lamson lease January 1, 1928, so as to put McCrory in immediate possession, the increased rental for the remainder of the term would profit Ricaby over $100,000. This must have been understood by both parties; the language creating that situation cannot be construed as giving rise to a meaningless or ineffective right. We regard it as the grant of a clear and definite option. It was supported by ample consideration, for it was an indivisible part of the entire contract. Ricaby granted the lease upon the conditions specified, and one of the agreed conditions was that the term should be advanced if, within the time limited, Ricaby created and tendered the opportunity which made the advance possible. Non constat that the lease would have been granted, if McCrory had not paid or Ricaby received the additional consideration inherent in this option.

There having been consideration for the grant of the option, its legal validity does not depend upon mutuality. Equity may, under some conditions and because there is no continuing mutuality of obligation, refuse to enforce a legally valid contract; but nevertheless there is full legal liability for a breach. Hunt v. Stimson (C. C. A. 6) 23 F.(2d) 447, 450. In such a case there is an implied contract on the part of the grantor of the option not to destroy the valuable right which he has granted. If A, wishing to buy certain property owned by B, and knowing that C is particularly fitted to buy it from B, agrees with C, upon consideration, to buy it from C at a stated price, if within the stated time C can succeed in buying it from B, it is necessarily implied that A will not, himself, during the life of the option, buy the property and thus defeat C's right. McCrory's purchase of the Lamson lease, therefore, involved a breach of McCrory's contract that he would accept it from Ricaby, if tendered. Williston on Contracts, §§ 670, 1318; U. S. v. Peck., 102 U. S. 64, 26 L. Ed. 46. In view of the nature of option contracts (Hunt v. Stimson, supra), they form no exception to the rule of U. S. v. Peck, and, since the option distinctly contemplated exercise during a fixed period, it cannot be confined to a reasonable time.

We come, then, to the remainder of clause B. Doubtless the parties did not have in mind the exact situation which has arisen, or else they would have adopted plainer words. This part of the clause was drafted by counsel representing McCrory. Its primary purpose plainly was to protect McCrory against a premature expiration of the term, and insure that the end should not be advanced as the beginning might be. This purpose being accomplished, the still later part of the clause then protected Ricaby, by requiring immediate payment of the rentals as soon as the amended term began. The provision is: "In the event lessee does obtain earlier possession of said demised premises, so that this indenture of lease begins at an earlier date, then," etc. The lessee did "obtain earlier possession of said demised premises," viz. on December 1, 1928, and thus the language literally supports Ricaby's present contention. The doubt, if any, comes from the next clause—"so that this indenture of lease begins at an earlier date." Do the words "so that" bring forward and incorporate the theretofore recited method by which the lessee might obtain earlier possession, thus meaning "in the event the lessee does so obtain earlier possession"; or do they merely indicate and state the natural and intended consequences of an earlier possession obtained in any way—"in the event"?

Without putting any controlling stress upon the inferences to be drawn against the party which formulates ambiguous language, we think the latter construction is the more reasonable. Certainly the former construction cannot be completely accepted. The notice and delay of six months or more provided for in the first part of the clause, were

for McCrory's benefit. Doubtless this time could be waived; and it is clear to us, if Ricaby, having bought up the Lamson lease, was able to put McCrory in possession at once, and McCrory entered, the new rentals would begin at once, although there would have been a departure from the procedure specified and the "earlier possession" would not have been "so obtained."

It is said that this latter construction is unreasonable, because it would give Ricaby power to oppress McCrory, by making no effort to buy up Lamson and advance McCrory's term, unless McCrory would submit to further unreasonable demands. It is true that Ricaby would have such power; but it is true because of the agreement which McCrory had made, and which tied his hands in this respect. The parties had dealt at arm's length. Ricaby had rights which McCrory was anxious to buy; each was experienced in large business affairs; each was represented and advised by able counsel; and that, in the turn of events, one party finds himself at a disadvantage because of a condition which was outstanding and plainly to be anticipated, is not of much importance in construing the language used. On the other hand, if the new lease was not to begin whenever McCrory went into possession, but he might continue to pay the Lamson rate, the value of the option which McCrory granted would be impaired, if not destroyed. So, comparing the matter of unreasonableness from the opposing constructions, we see that the contract granted the option; that Ricaby's construction requires only that hardship to McCrory which was inherent in the option, while McCrory's construction tends to destroy the option granted. Ricaby has the better reason.

There is another view confirming the same result. McCrory, by his unlawful purchase of the Lamson lease, himself created the impossibility of obtaining possession in the specific way contemplated by the first part of clause 8. Having agreed to take possession as Ricaby's tenant, under certain conditions, and having himself prevented Ricaby from performing these conditions, and having taken possession in another way, we think him equitably estopped from denying that his possession so obtained is that very advance possession which was in the general contemplation of both parties. The conventional elements of equitable estoppel are clear. There were the (implied) promise not to interfere by buying the Lamson lease, the reliance upon that promise, and the resulting misleading and prejudice.

While the bill of complaint is not confined sharply to one theory, we think it is entitled to stand, as its substantial basis, upon the theory that McCrory's possession had been and was under the McCrory lease, and that he was making unauthorized changes in the building without justification by the lease. This would be waste, and the jurisdiction of equity of a suit by the landlord to enjoin the tenant against waste is well established and familiar. Pomeroy's Equity Jurisp. § 1897.

If this case involved only, and if Ricaby's right to equitable relief directly depended upon, the first portion of clause 8, he would face the question whether the unilateral character of the legal right would prevent a court of equity from acting; but that is not now involved. Ricaby's dependence upon McCrory's breach of the implied covenant of the first part of the clause is collateral and not direct; the finding that there was a breach aids or leads to the true construction and effect of the second part of the clause; and that construction demonstrates equitable jurisdiction, as has just been pointed out. Thereupon, under familiar rules, equity will undertake jurisdiction of the whole controversy, legal as well as equitable, and dispose of it all by one decree. It will also require complainant to perform any conditions it may think equitable, and which are reasonably pertinent to the relief asked—not merely collateral.

We have indicated that Ricaby suffered legal damage by McCrory's intervention and purchase of the Lamson lease. To the extent that Ricaby profited through the payment to Lamson of what Ricaby must otherwise have paid, McCrory is entitled to reimbursement. It makes little difference whether the proper amount is called a credit against Ricaby's damages, if there should be so much, or whether McCrory should have an affirmative accounting against Ricaby along this line, as he would doubtless be permitted by his pleadings to claim, if he has not already done so. It would be premature for us to undertake now to state any basis of accounting; but a complete accounting, doing justice as nearly as may be to both parties, should be had in this case.

Under the circumstances, McCrory's denial of tenancy under his lease has not justified its forfeiture, and Ricaby should be directed to discontinue his efforts in that direction.

We are not impressed that, in the different transactions shown by the record, there has been inequitable conduct by Ricaby in such degree that a court of equity, under the

clean hands rule, ought to refuse relief to which he would otherwise be entitled. It appears that he used the existence of his option and the strategic advantage which this gave him as the basis of an insistence that McCrory should buy up the underlying lease upon terms which McCrory thought exorbitant; but this ought not to destroy or tend to impair any rights which Ricaby had, and it does not affect the proper construction of clause 8 or Ricaby's right to injunction against waste.

■ The order is reversed; the preliminary injunction should issue, and further proceedings be had in accordance with this opinion. If, pending this appeal, the necessity for such temporary relief has disappeared, or if McCrory performs all the obligations of the new lease, that will not affect the vested jurisdiction of the court to retain the case for a complete disposition of all the rights and obligations of the parties in the subject-matter.