## HORVATH v. McCORD RADIATOR & MFG. CO.

Circuit Court of Appeals, Sixth Circuit. November 4, 1929.

No. 5341.

Howard Streeter, of Detroit, Mich., and Robert Crosser, of Cleveland, Ohio (Mac-Kay, Wiley, Streeter, Smith & Tucker, of Detroit, Mich., on the brief), for appellant.

Charles E. Lewis and Charles C. Andrews, both of Detroit, Mich. (Thomas H. Adams and Warren, Hill & Hamblen, all of Detroit, Mich., on the brief), for appellee.

Before DENISON, HICKS, and HICKENLOOPER, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). The decree below found that the minds of the parties had met with sufficient definiteness to make an enforceable obligation and, in accordance with the prayer of the defendant's answer in the nature of a cross-bill, directed the plaintiff to execute a formal contract of exclusive license. Recognizing an element of vagueness in the provision for a 3 per cent. royalty upon the gross sales, the decree further specified the method of computation in certain instances, and directed a reference to a master to settle the terms if the parties could not agree in some particulars. Even if the letters had been free from all provisions regarding the execution of a future formal contract, we greatly doubt whether, as to this subject-matter, specific performance could be decreed. We do not doubt that there was such a consideration moving to plaintiff in the employment part of the contract as would furnish consideration for the option which he granted on this subject-matter, nor is there occasion to deny that conveyance under such an option would, if the terms were definite enough, be specifically enforced in equity. See Ricaby v. McCrory Stores Corp. (C. C. A. 6) 35 F.(2d) 14, decided Oct. 12, 1929, and cases cited. The doubt is as to whether this arrangement, in some of the particulars, is sufficiently definite. Passing by some other possible questions, we observe substantial uncertainty in two respects. The first is as to the rate of royalty. The product turned out by these machines and the thing which the parties had in mind was the completed fin tube for which the defendant would furnish the tube and the ribbon fin and the solder and the labor and the machine. The 3 per cent. upon the sale price of this finished prod-

uct was compensation only for the use of plaintiff's invention in applying the fin. In a concrete way that was so much a foot for this application, varying according to the size and other qualities of the finished tubing. This was simple enough, but it almost immediately developed—as would probably have been foreseen upon an attempt to formulate a proposed formal contract—that there would be other applications of the principle. The purchaser of the finished product proposed to supply his own tubing and have the defendant only furnish and apply the fin. It is not clear why plaintiff should not have the same royalty per foot for the use of the machine, whether defendant received the original tubing from the prospective purchaser of the product or bought it somewhere else; but defendant thought it should pay its royalty percentage only on the net amount paid by the purchaser; and, indeed, the court below so held. The further variation at once suggested was that the defendant would sell the finished tubing as a part of some larger article which it would sell complete. As soon as the parties discussed this they disagreed. Plaintiff wanted the 3 per cent. upon the selling price of the composite article; and Mr. McCord thought, as seems reasonable, that the only way would be to agree upon a price per foot; the difficulty was solved by the court below by adopting an apportionment on the basis of a cost accounting.

The second uncertainty is as to the right of rescission: We have quoted the language on this point. It is extremely vague. It amounts to saying that there should be a right of rescission if at any time fairness to both parties required it. It is difficult to believe that the parties intended to leave their respective rights on so vital a matter depending upon such a vague criterion. For a court of equity to direct the execution of a formal contract and leave such a provision in it would be only to invite future litigation as to what it meant, and neither court nor jury would have any satisfactory guide. The court below did not attempt to make this definite; indeed, his attention does not seem to have been drawn to this consideration.

These difficulties, more or less insuperable, in enforcing specific performance, we have pointed out; but we do not rest our conclusion upon their existence. To us they are persuasive—if there were otherwise doubt—that the parties did not suppose they had arrived upon any final contract on this subject-matter. They were expressing what is commonly called an agreement in principle, fully recognizing that there must be further agreement upon details before there was a complete legal obligation. This thought they frequently expressed. At the beginning of his first letter Mr. McCord says: "I have attempted this morning to embody in a letter our proposed arrangement and find that in attempting to reduce it to exact language it becomes very involved. I have abandoned the idea of expressing it in detail, but will briefly outline my understanding of the arrangement, as follows." Then in his answer plaintiff specifies that a formal legal contract of exclusive license shall be prepared and executed. Neither the words nor the circumstances indicate that this was to be done for the mere purpose of a record, or to show to other people, or otherwise as a mere formal memorial of an already perfected contract which on acceptance of the option would give the right to operate; it is expressly declared that this must be done "before any operations are started under such patent." The same provision in these same words is twice repeated with reference to two other license arrangements, under other patents to which the correspondence also related. In his reply Mr. McCord says that plaintiff's answer (including his condition) is satisfactory to him, with an exception not now important, and repeats that a regular license agreement should be made, not to embody a perfected contract, but to be "drawn up upon the *basis outlined.*"

Numerous cases are cited in which it has been held that the provision contemplating a future formal written contract did or did not prevent a more informal arrangement from taking effect—according as the facts of each case indicated.[1] We have examined all of those cited and others, and we find none inconsistent with our conclusion.

For the reasons stated, we are clear that this case should be classified with those which deny the existence of an enforceable contract.

The decree is reversed and the case remanded for further proceedings in accordance with this opinion.

---

[1] Jenkins Co. v. Alpena Co. (C. C. A. 6) 147 F. 641, 655; Northwestern Co. v. Grays Co. (C. C. A. 9) 221 F. 807; Bijur Co. v. Eclipse Co. (C. C. A. 2) 243 F. 600; Keystone Co. v. Fastpress Co. (C. C. A. 2) 272 F. 242; Norris v. Reed (C. C. A. 5) 278 F. 19; Brown Co. v. Rice (C. C. A. 5) 285 F. 673; Gen. Motors v. Abell (C. C. A. 1) 292 F. 922; Elkhorn Co. v. Kentucky Corp. (C. C. A. 6) 20 F.(2d) 67, 70 (and cases cited).