## NISLEY CO. v. RUDOLPH & BAUER et al.
### No. 6195.

Circuit Court of Appeals, Sixth Circuit.
April 13, 1933.

HICKENLOOPER, Circuit Judge, dissenting.

William Marshall Bullitt, of Louisville, Ky. (Bruce & Bullitt, of Louisville, Ky., and Arnold, Wright, Purpus & Harlor, of Columbus, Ohio, on the brief), for appellant.

R. P. Hobson, of Louisville, Ky. (Woodward, Hamilton & Hobson and D. A. Sachs, Jr., all of Louisville, Ky., on the brief), for appellees.

Before MOORMAN, HICKENLOOPER, and SIMONS, Circuit Judges.

MOORMAN, Circuit Judge (after stating the facts as above).

The contentions that Kraus had no authority to make a binding contract for the appellant, that Lee, the president of the appellant company, was without authority to authorize Kraus to make such a contract, and that the disposal of the lease on the storeroom located at 308 South Fourth street was a condition precedent to the incurring of any liability by the appellant under its proposal to lease the property at 564 South Fourth street, may be disposed of without elaboration. We think both Kraus and Lee had authority to bind the appellant, and it is our further opinion that there is no substantial evidence to warrant the inference that the proposal to lease the property was conditioned upon the disposal of the lease at 308 South Fourth street. With these questions out of the way, we have the primary question as to whether the correspondence of April 10th and 11th between Kraus and Merten constituted a binding contract, which includes a consideration of the further contention of appellant that the consent of Schulte to the assignment of the lease and the alterations

in the storeroom was never obtained, and therefore no contract was made.

■■■ The rule is that a contract may be made by an offer and acceptance manifesting mutual assent, although the parties may also manifest an intention to prepare and adopt a more formal agreement. Restatement of Law of Contracts, vol. 1, c. 3, § 26. It is of course essential that the offer "must be one which is intended of itself to create contractual relations upon its acceptance." Elkhorn-Hazard Coal Co. v. Kentucky River Coal Corp., 20 F.(2d) 67, 69 (6 C. C. A.). The application of this rule is often difficult and depends necessarily upon many considerations, as pointed out in the case just referred to, among them whether the contract is of that class which in its nature needs a more formal draft, whether it is a common or unusual contract, and especially whether the negotiations themselves indicate that "a written draft is contemplated as a final conclusion of the negotiations."

■■ As we view the letter of April 10th, it is an offer to purchase the lease upon either of two plans. The offer was evidently made as a result of prior discussions, as is indicated by the first sentence in the letter "confirming phone conversation of today." Following that sentence Kraus said: "The Nisley Company is prepared to proceed on this lease in either of the following ways." This, it seems to us, was an offer to purchase the lease upon the terms of either plan outlined, namely: (1) To pay $17,000 cash for the assignment of the leases, Rudolph & Bauer to retain title to the security deposits; or (2) to pay $19,000 cash for the assignment of the leases, including full title to the security deposits. The statement following this offer "in the event that a deal is closed on basis No. 1," is the equivalent, it seems to us, to saying "in the event that you accept our proposition No. 1." The further statement or caution in the letter, that to conclude the deal it would be necessary for Merten to have ready certain items, seems to us to mean merely that, even if the offer were accepted and a contract thus made, the appellant would not perform or carry out its promise, that is, pay the money and actually take over the lease, until these documents were ready for delivery. This view, we think, is borne out by the statement at the conclusion of the letter: "If all of the items herein specified are ready, I can be in Louisville on April 15th with a New York draft for the amount to be paid." As thus interpreted, we cannot doubt that this letter constituted a definite offer made with the intention of creating a contractual relation upon its acceptance. Such intention appears too clearly from the letter itself to admit of contradiction by outside parol evidence. Calderon v. Atlas Steamship Co., 170 U. S. 272, 280, 18 S. Ct. 588, 42 L. Ed. 1033.

What we have said above is not in conflict with the decision of this court in the Elkhorn-Hazard Coal Company Case. In that case the letter was not in the form of an offer. It merely stated that the writer "would be willing to make a lease," and, as Judge Westenhaver said "repels the idea that a contract would result by merely mailing an acceptance." Furthermore, the letter dealt with "only a few of the terms which would ordinarily be embodied in a mining lease" and did not say that the lease "would be such as appellee was accustomed to make to others in similar circumstances." Likewise, in Horvath v. McCord Radiator & Mfg. Co., 35 F.(2d) 640, 642 (6 C. C. A.), there was uncertainty in the terms of the offer such as to invite "future litigation as to what it meant" without any satisfactory guide either to court or jury. Here the terms were clear. The appellant offered "to proceed on this lease," that is, buy the lease and pay a stipulated amount therefor, provided Rudolph & Bauer would procure assignments of the antecedent leases, the written consent of certain parties to alterations which it wished to make, the alterations first to be approved by the lessor, a certified copy of the resolutions of the board of directors of Rudolph & Bauer authorizing the assignments, and, finally, information as to the title to the property. The information as to title was wanted only for the purpose of determining "the possible status of the Nisley Company's investment in this lease if there should be default in the underlying leases." Rudolph & Bauer accepted the offer, agreeing to all of its terms. There was no lack of definiteness in either the offer or the acceptance.

■■■ This brings us to a consideration of the refusal of Schulte to sign a written consent permitting alterations on the property for the purpose of adapting it to the appellant's needs for a retail store for shoes. If Rudolph & Bauer had refused without reason to furnish appellant with the written consent of Schulte to the alterations, obviously there could be no recovery. But Rudolph & Bauer were ready and willing to perform this part of their undertaking upon the condition that appellant give a bond to indemnify Schulte against damage and loss which might result from the proposed alterations. All that they

asked was that this antecedent lessee be given the protection commonly asked and given where such alterations are made. In making the condition that the consent of Schulte be obtained, the appellant must have understood, in view of the caution that men ordinarily take in their own affairs, that it would be given upon terms that were reasonable and customary. The request of Schulte was reasonable, and in our opinion it must be regarded as a condition contemplated by the terms of the appellant's offer. Rudolph & Bauer having agreed to furnish the con ent of Schulte upon the condition which thus must have been contemplated, the failure to furnish it arising from the refusal of the appellant to provide bond or to give assurance that the bond offered was good is not available as a defense to a breach of the contract.

The judgment is affirmed.

HICKENLOOPER, Circuit Judge (dissenting).

I regret that I cannot concur in the above opinion. It is seemingly there conceded that any obligation on the part of the appellant to accept the assignments and to pay the purchase price for the lease in question, was expressly conditioned on the consent of Schulte to the making of the improvements. The obligation of procuring this consent rested entirely with Rudolph & Bauer, and the only consent specified in the contract, conceding that the exchange of communications on April 10 and 11, 1930, resulted in a contract, was an unconditional consent, free from further burden, obligation, duty, or possible liability upon the part of the Nisley Company. This consent was not only not secured, but it was refused by Schulte except and unless the Nisley Company would give a surety company bond that the alterations should be commenced within thirty days of the date of said bond and be completed within a reasonable time, that D. A. Schulte, Inc., should be indemnified against all damage and expense whatsoever "in any wise arising out of such alterations," and that any liens which might be filed would be discharged within ten days, regardless of the merit of the claim.

The procurement of such a bond would require the payment of a substantial premium and probably indemnity of the surety company. It would create possible liability on the part of the Nisley Company to respond in damages for loss of trade on the part of Schulte, due to the fact of the making of the alterations in adjoining premises, although without fault or negligence upon the part of the contractors. It might deprive the

Nisley Company of the right to contest claims made without merit. I know of no authority justifying a court in imposing such an obligation upon one who has not contracted to assume it, especially under circumstances where the burden of performance of a condition precedent is expressly placed upon the other contracting party and where it affirmatively appears that the latter has wholly failed to sustain such burden or procure the performance of the condition precedent.